DISTRICT COURT, DENVER COUNTY, COLORADO
1437 Bannock Street
Denver, CO 80202
―――――――――――――――――――――――――――――――

Plaintiffs:    C & M RESOURCES, LLC, a Colorado
limited liability company, and WINTER OIL, LLC, a
Colorado limited liability company, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

v.

Defendant:   EXTRACTION OIL & GAS, INC., F/K/A
EXTRACTION OIL & GAS, LLC.
―――――――――――――――――――――――――――――――

**Attorneys for Plaintiffs and the Proposed Class and Sub Classes:**

Lance F. Astrella, Co. Bar No. 5183
Astrella Law P.C.
1600 Broadway, Ste. 1070
Denver, CO 80202
(303) 292-9021
lance@astrellalaw.com

Stacy A. Burrows, Co. Bar No. 49199
Barton and Burrows, LLC
5201 Johnson Drive, Ste. 110
Mission, KS 66205
(913) 563-6253
stacy@bartonburrows.com

▲ COURT USE ONLY ▲

Case Number: 2019CV034705

Div/Ctrm:  275

### THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs C & M Resources, LLC ("C & M Resources") and Winter Oil, LLC ("Winter Oil"), on behalf of themselves and the classes of royalty owners defined below, for their class action complaint against Defendant Extraction Oil & Gas, Inc., f/k/a Extraction Oil & Gas, LLC ("Extraction"), state as follows:

Consistent with Rule 15(a), Plaintiffs are filing this amended complaint with the written consent of the adverse party, Defendant Extraction Oil and Gas, Inc.

## FACTUAL ALLEGATIONS

1.      Plaintiffs claim that Extraction has underpaid royalties to them, and to all other similarly situated members of the Class and Sub Classes defined in Paragraph 2 below, on oil and natural gas, including natural gas liquids, produced and sold by Extraction from wells located in the State of Colorado.

2.      Plaintiffs bring this action individually and on behalf of the Class and the Sub Classes of similarly situated persons and entities pursuant to C.R.C.P. 23(b)(1)-(3). The Class and Sub Classes are defined as follows:

**The "Take-or-Pay Fee" Oil Class includes Extraction Royalty owners consisting of:**

> All persons and entities, including their respective successors and assigns, to whom Extraction, since December 1, 2013, has paid royalties or overriding royalties (collectively, "Royalties") under oil and gas leases or overriding royalty interests ("Royalty Agreements") on oil produced from wells located in the state of Colorado, from which Extraction deducted unused capacity reservation charges or take or pay fees hereinafter referred to as "Take-or-Pay Fees."

**The "Free of Cost" Oil Sub Class includes Extraction Royalty owners consisting of:**

> All persons and entities, including their respective successors and assigns, to whom Extraction has paid Royalties, since December 1, 2013, on oil produced from wells located in the state of Colorado, pursuant to Royalty Agreements which expressly prohibit the deduction of post-production costs incurred in order to gather or transport the oil from the wellhead into the pipeline in the calculation of Royalties, because such Royalty Agreements contain language that the oil Royalties are paid free of cost(s) in the pipeline.

**The "Market Price" Oil Sub Class includes Extraction Royalty owners consisting of:**

> All persons and entities, including their respective successors and assigns, to whom Extraction has paid Royalties, since December 1, 2013, on oil produced from wells located in the state of Colorado, pursuant to Royalty Agreements which state that oil Royalties shall be paid based on the "market" or "field-wide" price.

The "Prohibits Deductions" Oil Sub Class includes Extraction Royalty owners consisting of:

> All persons and entities, including their respective successors and assigns, to whom Extraction has paid Royalties, since December 1, 2013, on oil produced from wells located in the state of Colorado, pursuant to Royalty Agreements which expressly prohibit the deduction of costs incurred after the oil is severed from the wellhead in Extraction's calculation of royalties.

The "Silent" Oil Sub Class includes Extraction Royalty owners consisting of:

> All persons and entities, including their respective successors and assigns, to whom Extraction has paid Royalties, since December 1, 2013, on oil produced from wells located in the state of Colorado, pursuant to Royalty Agreements which do not expressly authorize the deduction of costs incurred in order to market such oil after it is severed from the wellhead in the calculation of royalties.

The "Prohibits Deductions" Gas Sub Class includes Extraction Royalty owners consisting of:

> All persons and entities, including their respective successors and assigns, to whom Extraction has paid Royalties, since December 1, 2013, on natural gas produced from wells located in the state of Colorado, pursuant to Royalty Agreements which expressly prohibit the deduction of post-production costs incurred after the gas is severed from the wellhead in Extraction's calculation of Royalties.

The Class and Sub Classes exclude: (1) agencies, departments, or instrumentalities of the United States of America; (2) publicly traded oil and gas exploration companies and their affiliates; (3) working interest owners in a Colorado Extraction well; and (4) Extraction and its affiliates.

## JURISDICTION, VENUE, AND PARTIES

3.     Plaintiff C & M Resources, LLC is a Colorado limited liability company with its principal place of business located at 16 Sunset Circle, Longmont, Colorado 80501, and has been paid Royalties on oil and natural gas produced by Extraction since December 1, 2013.

4.     Plaintiff C & M Resources, LLC is the successor in interest to the lessor of an oil and gas lease dated July 27, 1970, which was entered into between James S. Haley, Trustee of the

Carl E. Johnson Trust, as Lessor, and Tom Vessels, as Lessee recorded at Reception Number 1552227 in the land records of Weld County, Colorado (the "C & M Lease").

5.      Extraction is the successor in interest to the Lessee Tom Vessels under the C & M Lease and has paid royalties to C & M Resources at various times since December 1, 2013 (the "Class Time Period").

6.      The C & M Lease, along with its amendments recorded at Reception Numbers 3254289, 3254236, 3982586 and 3982587, is attached hereto as **Exhibit 1.**

7.      Extraction has produced both oil and natural gas pursuant to the C & M Lease since December 1, 2013.

8.      The C & M Lease is a "Free of Cost" Oil Sub Class Lease.

9.      Under the C & M Lease, Extraction, as the successor of Tom Vessels, is obligated to pay royalties on oil to C & M Resources under Paragraph 3 of the C & M Lease as follows:

> To deliver to the credit of lessor, **free of costs, in the pipe line** to which lessee may connect his wells, the equal one-eighth 1/8th part of all oil produced and saved from the leased premises.

(Exhibit 1, p. 1) (emphasis added).

10.     Therefore, Extraction has the duty to pay Royalties to C & M Resources based on the actual price received for the sale of the oil, without deductions for gathering or transportation costs incurred while transferring the oil from the wellhead to the pipeline.

11.     Under Colorado precedent, if the "free of costs" language does not properly address the allocation of post-production costs, then the C & M Lease is considered to be "Silent" as it relates to Extraction obligation to pay royalties on its oil production in Colorado. Therefore, Extraction has the duty to pay royalties to C & M Resources and the Class members based on the prices received for oil in a physical condition where it is acceptable to be bought and sold and at

4

the location of the first commercial market under *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 912-13 (Colo. 2001).

12.     Winter Oil is a Colorado limited liability company with its principal place of business located at 38117 CR 37, Eaton, Colorado, 80615, and has been paid Royalties on oil and natural gas produced by Extraction under two Royalty Agreements at various times since December 1, 2013.

13.     Winter Oil is the successor in interest to the lessors of two oil and gas leases. One oil and gas lease was entered into between Charles R. Winter and Charlene J. Winter as Lessors, and Energy & Exploration Partners, LLC as Lessee, dated March 11, 2011 (the "Winter Lease No. 1"). The memorandum thereof is recorded at Reception Number 3764038 with the Clerk and Recorder of Weld County, Colorado. Winter Lease No. 1 and the memorandum are attached hereto as **Exhibit 2.**

14.     Under Paragraph 2 of the Winter Lease No. 1, Extraction is obligated to pay royalties to Winter Oil on oil production as follows:

> The lessee shall deliver to the credit of the lessor as royalty, **free of cost, in the pipeline** to which lessee may connect its wells the equal of One-Fifth (1/5) part of all oil produced and saved from the lease premises, or lessee may from time to time at its option purchase any royalty oil in its possession, **paying the market price thereof prevailing for oil of like grade and gravity in the field where produced on the day of purchase.**

(Exhibit 2, p. 1) (emphases added).

15.     Winter Lease No. 1 is a "Free of Cost" Oil Sub Class lease, a "Market Price" Oil Sub Class, and/or "Silent" Oil Sub Class lease as it relates to Extraction's oil production. Extraction has the duty to pay Royalties to Winter Oil based on the market price in the field of oil, without the deduction of costs to gather and transport the oil to the pipeline.

16.     Under Paragraph 2 of Winter Lease No. 1, Extraction is obligated to pay royalties

to Winter Oil on the production of natural gas as follows:

> The lessee shall pay lessor, as royalty, on gas, including casinghead gas or other
> gaseous substances, produced from the leased premises and sold or used off the
> premises or used in the manufacture of gasoline or other products, the market value
> at the well of the gas sold or used, provided on gas sold the royalty shall be One-
> Fifth (1/5) of the amount realized from such sale. The amount realized from the
> sale of gas shall be the price established by the gas sales contract entered into in
> good faith by lessee and a gas purchaser for such term and under such conditions
> as are customary in the industry. 'Price' shall mean the net amount received by
> lessee after giving effect to the applicable regulatory orders and after application
> of any applicable price adjustments specified in such contract or regulatory orders.
> ~~In the event that lessee compresses, treats, purifies, or dehydrates such gas
> (whether on or off the leased premises) or transports gas off the leased premises,
> lessee in computing royalty hereunder may deduct form such price a reasonable
> charge for each of such functions performed.~~

(Exhibit 2, pp. 1-2).

17.     Winter Oil Lease No. 1 is a "Prohibits Deductions" Gas Sub Class Lease because

it prohibits the deduction of post-production costs in the calculation and payment of Royalties on

natural gas. Because the parties intentionally struck out the language in the gas Royalty provision

allowing the lessee to take certain post-production cost deductions, the parties agreed that the

lessee was not permitted to take deductions for such post-production costs as compressing,

treating, purifying, dehydrating, or transporting such natural gas from Winter Oil's natural gas

Royalties.

18.     Winter Oil is also the successor in interest to the Lessor under the oil and gas lease

entered into between Charles R. Winter, Jr. and Charlene Winter as Lessors and R. K. Pinson &

Associates (CO) LLC as Lessee on November 12, 2014, and recorded at Reception Number

4066913 with the Clerk and Recorder of Weld County, Colorado ("Winter Lease No. 2"), as

corrected at Reception Number 4144450. The Winter Lease No. 2 and Correction are attached

hereto as **Exhibit 3.**

6

19.     The Winter Lease No. 2 lease is a "Prohibits Deductions" Oil Sub Class Lease and a "Prohibits Deductions" Gas Sub Class Lease.

20.     Under the Winter Lease No. 2, Extraction is obligated to pay royalties to Winter Oil on the oil and natural gas produced thereto under Paragraph 2 as follows:

> In consideration of the premises the Lessee covenants and agrees to pay Lessor 20% of the proceeds received by Lessee for all oil (including but not limited to condensate and distillate) and 20% of the proceeds received by Lessee for all gas of whatsoever nature or kind (with all constituents) sold from the leased premises or on acreage pooled therewith, but in no event more than 20% of the actual amount received by Lessee, payments to be made monthly.

(Exhibit 3, pp, 1-2).

21.     The Winter Lease No. 2 also contains the following provision regarding the calculation and payment of Royalties:

> 14.     Lessee agrees that all royalties accruing under the lease shall be free and clear of all costs and expenses, including, but not limited to fuel, and all of the costs and expenses of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, marketing, and/or otherwise making the oil, gas, and other products produced hereunder ready for sale or use, and no deduction shall be made for any such costs and expenses in computing any payment to be made to Lessor.

(Exhibit 3, p. 4).

22.     The Winter Lease No. 2 is a "Prohibits Deductions" Gas Sub Class Lease because paragraph 14 specifically prohibits the deduction of post-production costs in the calculation and payment of Royalties on natural gas.

23.     The Winter Lease No. 2 is a "Prohibits Deductions" Oil Subclass Lease because paragraph 14 specifically prohibits the deduction of all costs and expenses associated with gathering, treating, and marketing the oil after it is severed from the wellhead in the calculation and payment of Royalties on oil.

24.     Defendant Extraction is a Delaware Corporation which has its principal place of business at 370 17th Street, Suite 5300, Denver, Colorado 80202, and its registered agent in Colorado is C T Corporation System, whose address is 7700 E Arapahoe Road, Suite 220, Centennial, CO 80112.

25.     This Court has personal jurisdiction over Extraction because Extraction has conducted and continues to conduct substantial business activities in the state of Colorado and the acts and conduct giving rise to the claims asserted in this Class Action Complaint occurred in Colorado.

26.     Venue is proper in this Court because Extraction may be found and served in Denver County, Colorado. This complaint designates venue in Denver County, Colorado, pursuant to Colo. R. Civ. P. 98(c)(1), because the course of conduct performed by Extraction which gives rise to the claims asserted herein, including its corporate decision-making, occurred, in substantial part, at its principal place of business located in Denver County, Colorado. In addition, because Extraction maintains its principal place of business in Denver County, Colorado, it conducts substantial business in this judicial district. Finally, the named Plaintiffs and the proposed Class and Sub Class members have sustained the damages referenced herein from Extraction's conduct and business activities in this judicial district.

## CLASS ACTION ALLEGATIONS

27.     Based upon a review of more than ten thousand Royalty Agreements pursuant to which Extraction has paid Royalties since December 1, 2013, the number of persons included within the Class and each of the Sub Classes are so numerous that joinder of all Royalty owners in this litigation is impracticable.

28.     There are questions of law or fact which are common to the Plaintiffs and the Class and predominate over any questions affecting only individual members of the Class. There are also questions that are common to large groups of Class members but not others and predominate over any questions affecting only individuals within those groups, and those groups constitute the Sub Classes.

29.     The common questions that apply to Plaintiffs and the Class as a whole include, without limitation, the following:

a)  Whether the common method utilized by Extraction to calculate and pay Royalties on oil, particularly Extraction's common method of deducting Take-or-Pay Fees from the Plaintiffs' and the proposed Class members' royalties, is consistent with Extraction's obligations as a successor lessee under all of the Royalty Agreements;

b)  Whether the common method utilized by Extraction to calculate and pay Royalties on oil by consistently deducting costs incurred to get the oil from the wellhead to the pipeline is consistent with Extraction's obligations under the "Free of Cost," "Market Price," "Silent" or "Prohibits Deductions" Oil Sub Class Leases; and

c)  Whether the common method utilized by Extraction to calculate and pay Royalties on natural gas it has produced, since December 1, 2013, by consistently deducting post-production costs from the Plaintiffs' and the proposed Class members' Royalties is proper under the "Prohibits Deductions" Gas Sub Class Leases.

30.     There are numerous questions of law or fact which are common to the claims of the named Plaintiffs and the "Take-or-Pay Fee" Oil Class and predominate over any questions affecting only individual members of the Class. The common questions to the Class as a whole include, without limitation, the following:

a)  Whether Extraction deducted from Plaintiffs' and the proposed Class members' Royalties, or otherwise allocated to Class members, fees, costs, and/or penalties that originate from Extraction's contracts with pipeline companies due to Extraction's failure to deliver an agreed upon quantity of oil into the pipeline each month;

b)  Whether under the Royalty Agreements, Extraction can properly deduct from Plaintiffs' and the Class members' Royalties, or otherwise allocate to Class members, fees, costs, and/or penalties that originate from Extraction's contracts with pipeline

companies due to Extraction's failure to deliver an agreed upon amount of oil into the pipeline; and

c) Whether Extraction may disguise the deduction of these Take-or-Pay Fees, costs, and/or penalties from Plaintiffs' and the Class members' Royalties by reporting lower oil prices per barrel to Plaintiffs and the proposed Class members than the actual prices received for oil on a price per barrel each month.

31.    There are numerous questions of law or fact which are common to the claims of the named Plaintiffs and the "Free of Cost" Oil Sub Class and predominate over any questions affecting only individual members of the "Free of Cost" Oil Sub Class. The common questions to the "Free of Cost" Oil Sub Class as a whole include, without limitation, the following:

a) Whether Extraction deducted post-production costs associated with gathering and transporting the oil from the wellhead to the pipeline from the Plaintiffs and the "Free of Cost" Oil Sub Class members' Royalties, under Royalty Agreements that expressly provided that the Royalties will be calculated and paid free of costs, in the pipeline;

b) Whether Extraction may disguise its deduction of post-production costs associated with gathering and transporting the oil produced by reporting lower oil prices to Plaintiffs and the "Free of Cost" Oil Sub Class members than the actual prices Extraction received for the oil produced; and

c) Whether Extraction has calculated and paid Royalties to Plaintiffs and the "Free of Cost" Oil Sub Class members by calculating and paying using a net, rather than gross, oil sales price where the Royalty Agreements expressly require Royalties to be paid free of cost, in the pipeline.

32.    There are numerous questions of law or fact which are common to the claims of the Plaintiff Winter Oil and the "Market Price" Oil Sub Class and predominate over any questions affecting only individual members of the "Market Price" Oil Sub Class. The common questions to the "Market Price" Oil Sub Class as a whole include, without limitation, the following:

a) What price does Extraction use to calculate and pay Royalties to Winter Oil and the "Market Price" Oil Sub Class members under Royalty Agreements that expressly require Royalties to be paid on the "market," "field," or "field-wide" price received for the oil; and

b)  Upon what price is Extraction required to calculate and pay oil Royalties to Winter Oil and the "Market Price" Oil Sub Class members under the Royalty Agreements that expressly require Royalties to be paid on the "market," "field," or "field-wide" price.

33.     There are numerous questions of law or fact which are common to the claims of the Winter Oil and the "Prohibits Deductions" Oil Sub Class members which predominate over any questions affecting only individual members of the "Prohibits Deductions" Oil Sub Class. The common questions to the "Prohibits Deductions" Oil Sub Class as a whole include, without limitation, the following:

a)  Whether Extraction deducted post-production costs associated with gathering and transporting the oil from the wellhead from Winter Oil and the "Prohibits Deductions" Oil Sub Class members' Royalties, under Royalty Agreements that expressly prohibit the deduction of post-production costs in the calculation and payment of royalties;

b)  Whether Extraction may disguise its deduction of post-production costs associated with gathering and transporting the oil produced by reporting lower oil prices to Winter Oil and the "Prohibits Deductions" Oil Sub Class members than the actual prices Extraction received for the oil produced; and

c)  Whether Extraction has calculated and paid Royalties to Winter Oil and the "Prohibits Deductions" Oil Sub Class members by calculating and paying using a net, rather than gross, oil sales price where the Royalty Agreements expressly require Royalties to be calculated free of such costs.

34.     There are numerous questions of law or fact which are common to the claims of the named Plaintiffs and the "Silent" Oil Sub Class members which predominate over any questions affecting only individual members of the "Silent" Oil Sub Class. The common questions to the "Silent" Oil Sub Class as a whole include, without limitation, the following:

a)  Whether Extraction had a common obligation to pay Royalties to Plaintiffs and the "Silent" Oil Sub Class members based upon prices received for oil produced and sold from those Royalty Agreements;

b)  Whether the location of the first commercial market for the oil that Extraction produced and sold from the Plaintiffs and the "Silent" Oil Royalty Agreements is at the pipeline receipt point where Extraction delivered the oil and sold the oil to third-party purchasers; and

11

c) Whether Extraction, when paying Royalties to Plaintiffs and the "Silent" Oil Sub Class members, based those Royalties on the net, rather than gross, value of the oil sold.

35.    There are numerous questions of law or fact which are common to the claims of the named Plaintiff Winter Oil and the "Prohibits Deductions" Gas Sub Class that predominate over any questions affecting only individual members of the "Prohibits Deductions" Gas Sub Class. Some of the common questions which apply to the "Prohibits Deductions" Gas Sub Class as a whole include, without limitation, the following:

a) Whether Extraction had a common obligation to pay Royalties to Winter Oil and the "Prohibits Deductions" Gas Sub Class members on the production of natural gas based upon the prices actually received at the point of sale for both the residue gas and the natural gas liquid products produced and sold subject to those Royalty Agreements;

b) Whether Extraction is calculating and paying Royalties to Winter Oil and the "Prohibits Deductions" Gas Sub Class members on the natural gas on a net basis after taking deductions from the actual sales prices received or by using a netback price as the starting point for the calculation of Royalties paid to Winter Oil and the "Prohibits Deductions" Gas Sub Class members;

c) Whether under the terms of the "Prohibits Deductions" Gas Sub Class Royalty Agreements and under Colorado law it is proper for Extraction to pay Royalties to Winter Oil and the "Prohibits Deductions" Gas Sub Class members based on the net, rather than gross gas sales value; and

d) Whether under the terms of the "Prohibits Deductions" Gas Sub Class Royalty Agreements and under Colorado law it is proper for Extraction to pay Royalties to Winter Oil and the "Prohibits Deductions" Gas Sub Class members by taking deductions for various post-production costs incurred.

36.    The claims of Plaintiffs are typical of the claims of the members of the Class and Sub Classes because there is a clear nexus between their claims and those of the Class and Sub Classes as there are common questions of fact and law which unite not only the Class, but also the Sub Classes.

37.     The litigation of separate actions by individual members of the Class and each Sub Class would create risk of inconsistent adjudications which would establish incompatible standards of conduct for Extraction.

38.     Plaintiffs are adequate representatives of the Class and each Sub Class, and Plaintiffs' interests do not conflict with the interests of any other members of the Class or the Sub Classes in that both Plaintiffs and the other members of the Class and Sub Classes were subject to effectively the same Royalty Agreement language and the same conduct which supports Plaintiffs' claims against Extraction. Moreover, Plaintiffs and their attorneys will fairly and adequately protect the interests of the Class and each Sub Class.

39.     The predominance requirement under C.R.C.P. 23(b)(3) is also satisfied. Plaintiffs' claims and the claims of each of the Class and Sub Class members arise out of the same operative facts, are based on same legal theories, and involve common issues of fact and law that will predominate in this case.

40.     The maintenance of this case as a class action on behalf of the defined Class and Sub Classes is superior to other available methods for the fair and efficient adjudication of the claims of the members of the proposed Class and Sub Classes against Extraction. It would be burdensome for this Court to have numerous individual claims in separate lawsuits, every one of which would present the exact same issues which are presented in this lawsuit.

### GENERAL FACTUAL ALLEGATIONS OF THE CLASS

41.     Extraction has underpaid Plaintiffs and Class members on oil Royalties since December 1, 2013, by making improper deductions for fees, costs, and/or penalties that are not authorized by the operative Royalty Agreements and/or paying on oil prices that are not authorized by the operative Royalty Agreements or Colorado law.

42.    Extraction has not reported its improper oil Royalty deductions and/or pricing scheme to Plaintiffs or the Class members but has instead reported oil prices on the Plaintiffs and the Class members' royalty statements that are substantially lower than the actual prices that were paid for oil produced from the same general area by other oil and gas operators in the Denver-Julesburg Basin ("DJ Basin") in Colorado.

43.    Accordingly, based on this common royalty payment method, Extraction has underpaid Plaintiffs and the Class members on oil Royalties since December 1, 2013, by taking improper Take-or-Pay fees and costs that are not authorized by the operative Royalty Agreements or under Colorado law.

## GENERAL FACTUAL ALLEGATIONS OF THE "TAKE-OR-PAY FEE" OIL SUB CLASS

44.    Extraction is an operator of thousands of oil and gas wells located in the DJ Basin in the State of Colorado.

45.    Extraction has and continues to produce and sell oil produced from the DJ Basin in Colorado at various times since December 1, 2013.

46.    Extraction entered into a contract or contracts with third parties for the delivery of oil it produces from the wells it operates in the DJ Basin in Colorado into pipelines ["Oil Contract(s)"], such as the Grand Mesa Pipeline.

47.    Under Extraction's Oil Contract(s), Extraction contracted to reserve space and pay for guaranteed capacity in the oil pipeline(s), such as the Grand Mesa Pipeline, whereby under the Oil Contracts, Extraction agreed to produce and deliver a certain quantity of barrels of oil per day to the pipeline(s) ("Oil Obligations").

48.    Under Extraction's Oil Contract(s), Extraction also agreed to pay to the pipeline company for pipeline capacity whether or not it was used.

14

49.     Neither Plaintiffs nor the Class members are parties to Extraction's Oil Contract(s).

50.     On information and belief, Extraction consistently failed to meet its Oil Obligations under the Oil Contract(s) beginning in November 2016, and therefore was required to pay Take-or-Pay Fees to the third-party pipeline companies.

51.     On information and belief, Extraction consistently deducted these Take-or-Pay Fees and other charges incurred under the Oil Contracts from Plaintiffs' and the Class members' Royalties.

52.     None of the Royalty Agreements at issue in this litigation authorize Extraction to deduct Take-or-Pay Fees from Plaintiffs' or the Class members' Royalties.

53.     Under Colorado law, Extraction does not have contractual or legal authority to deduct such Take-or-Pay Fees from Plaintiffs' or the Class members' Royalties.

54.     Extraction did not identify these deductions for Take-or-Pay Fees in the royalty remittance statements prepared and provided to Plaintiffs and the Class members with their royalty payments each month (the "Royalty Statements"). Instead, Extraction intentionally withheld such deduction information by reporting to Plaintiffs and the Class members netback prices (lesser per barrel oil prices than the prices for which Extraction actually sold the oil production at issue).

55.     Other oil and gas operators in the DJ Basin also deliver their oil production to the Grand Mesa Pipeline to deliver the oil to a common delivery point in Cushing, Oklahoma.

56.     In the months immediately preceding November 2016, the oil prices reported by Extraction on its Royalty statements were similar to the prices reported by the U.S. Energy

Information Administration ("EIA") for Colorado Crude Oil First Purchase Price and prices paid by other operators in the DJ Basin.[1]

57.    Starting in November 2016, the price per barrel for oil reported by Extraction on its Royalty Statements was significantly lower than the Colorado Crude Oil First Purchase Price reported by the EIA and the prices paid on barrels of oil by other oil and gas operators in the DJ Basin.

### GENERAL FACTUAL ALLEGATIONS OF THE "FREE OF COST" OIL SUB CLASS

58.    Plaintiffs and "Free of Cost" Oil Sub Class members are paid Royalties on oil pursuant to Royalty Agreements that state that oil Royalties shall be paid based on free of cost, in the pipeline.

59.    Under the operative Royalty Agreements, Extraction cannot deduct costs associated with gathering and transporting the oil from Plaintiffs' and "Free of Cost" Oil Sub Class members' Royalties.

60.    In order to transport oil from the wellhead to the pipeline, Extraction pays a related entity and/or a third-party certain costs associated with gathering, transportation, and other related services.

61.    Extraction has consistently taken deductions from Royalties paid to the Plaintiffs and the "Free of Cost" Oil Sub Class members related to such gathering and/or transportation costs, without reporting the same or otherwise making the deductions known to Plaintiffs and the "Free of Cost" Oil Sub Class members.

---

[1] Pricing information available at *https://www.eia.gov/dnav/pet/pet_pri_dfp1_k_m.htm*. The prices reported are the average oil price at the lease or wellhead reported to the EIA.

62.    Extraction continues to breach its Royalty payment obligations to Plaintiffs and the "Free of Cost" Oil Sub Class members by underpaying the Royalties owed to them under the Royalty Agreements.

## GENERAL FACTUAL ALLEGATIONS OF
## THE "MARKET PRICE" OIL SUB CLASS

63.    Plaintiff Winter Oil and the "Market Price" Oil Sub Class members are paid Royalties on oil pursuant to Royalty Agreements that require oil Royalties to be paid based on "market," "field," or "field-wide" prices.

64.    The price of oil that Extraction has reported to Plaintiff Winter Oil and "Market Price" Oil Sub Class members, upon which it has paid Royalties, has been significantly lower than the Colorado Crude Oil First Purchase Price reported by the EIA and the prices paid on barrels of oil by other oil and gas operators in the DJ Basin since November 2016.

65.    "Market," "field," or "field-wide" prices are dictated by the prices paid by operators in the "field." In this case, the DJ Basin constitutes a "field."

66.    Extraction has and continues to breach its Royalty payment obligations to Plaintiff Winter Oil and the "Market Price" Oil Sub Class members on its oil production by underpaying the Royalties owed to them under the Royalty Agreements.

## GENERAL FACTUAL ALLEGATIONS OF THE
## "PROHIBITS DEDUCTIONS" OIL SUB CLASS

67.    Plaintiff Winter Oil and the "Prohibits Deductions" Oil Sub Class members are paid Royalties pursuant to Royalty Agreements that expressly require oil Royalties to be paid

based on the actual price received without the deduction of any post-production costs incurred to market such oil after it is severed from the wellhead.

68.     Extraction has and continues to breach its Royalty payment obligations to Plaintiffs and the "Prohibits Deductions" Oil Sub Class members in its calculation and payment of Royalties on oil by underpaying Royalties owed to them under the Royalty Agreements and pursuant to Colorado law.

69.     Extraction has underpaid Royalties owed to Plaintiffs and the "Prohibits Deductions" Oil Sub Class members on its oil production by failing to pay Royalties without the deduction of post-production costs incurred to market the oil after it is severed from the wellhead.

70.     Pursuant to the Royalty Agreements, Extraction has had the obligation to incur all of the post-production costs incurred to market the oil after it is severed from the wellhead. Winter Oil and the "Prohibits Deductions" Oil Sub Class members are not obligated to share in any of these post-production marketability costs.

## GENERAL FACTUAL ALLEGATIONS OF THE
## "SILENT" OIL SUB CLASS

71.     Extraction started producing oil in Colorado in December 2013.

72.     The Royalty Agreements under which Plaintiffs and the "Silent" Oil Sub Class members are paid Royalties on oil do not expressly authorize the deduction of post-production costs incurred after oil is severed from the wellhead in order to render production marketable and deliver it to the first commercial market.

73.     Thus, under the applicable "Silent" Royalty Agreements, Extraction has an implied duty to market the oil produced from the wells drilled subject thereto, and to pay Royalties to Plaintiffs and the "Silent" Oil Sub Class members based upon prices received for marketable oil at the location of the first commercial market.

74.     The location of the first commercial market for the oil is at the delivery points at various interconnects to the long-distance transportation pipelines, where it is believed that Extraction sells the oil to third-party purchasers.

75.     Extraction has and continues to breach its Royalty payment obligations to Plaintiffs and the "Silent" Oil Sub Class members by underpaying the Royalties owed to them under the Royalty Agreements pursuant to Colorado law.

76.     Extraction has underpaid the Royalties owed to the Plaintiffs and the "Silent" Oil Sub Class members by failing to base such Royalties upon prices received for marketable oil at the location of the first commercial market.

77.     Pursuant to the implied duty to market recognized under Colorado law, Extraction has the obligation to incur all of the post-production costs necessary to place the oil at issue into a condition acceptable for the commercial market, and all of the Costs of delivering the marketable oil to the location of the first commercial market.

## GENERAL FACTUAL ALLEGATIONS OF THE "PROHIBITS DEDUCTIONS" GAS SUB CLASS

78.     Extraction started producing natural gas in Colorado in December 2013.

79.     The Royalty Agreements under which Winter Oil and "Prohibits Deductions" Gas Sub Class members are paid Royalties on natural gas expressly prohibit the deduction of post-production costs such as fees and charges for gathering, dehydration, compression, transportation, fuel, treating, processing, and other marketing costs.

80.     Extraction has and continues to breach its Royalty payment obligations to Winter Oil and the "Prohibits Deductions" Gas Sub Class members in its calculation and payment of Royalties on natural gas by underpaying Royalties owed to them under the Royalty Agreements and pursuant to Colorado law.

81.    Extraction has underpaid Royalties owed to Winter Oil and the "Prohibits Deductions" Gas Sub Class members on its natural gas production, by failing to pay Royalties based upon the actual prices received for residue gas and the natural gas liquid products, including propane, butane, isobutane, natural gasoline, and ethane, at the point of sale without the deduction of post-production costs.

82.    Pursuant to the Royalty Agreements, Extraction has had the obligation to incur all of the post-production costs incurred through the actual point of sale of the residue gas and natural gas liquid products. Winter Oil and the "Prohibits Deductions" Gas Sub Class members are not obligated to share in any of these post-production costs.

## CLAIM I FOR RELIEF – "TAKE-OR-PAY FEE" OIL CLASS
### (Breach of Contract)

83.    The allegations contained in Paragraphs 1 through 82, inclusive, are restated and incorporated by reference herein.

84.    Extraction has failed to properly pay Royalties to Plaintiffs and the Class members on oil production as follows:

(a) Extraction entered into Oil Contract(s) with third-party pipeline companies to deliver a certain quantity of oil into third-party pipelines, such as the Grand Mesa Pipeline;

(b) Extraction agreed in its Oil Contract(s) to pay Take-or-Pay Fees if it failed to deliver the agreed-upon quantity of oil each day into those third-party pipelines;

(c) Extraction failed to meet its obligations under the Oil Contract(s), which required it to pay Take-or-Pay Fees under its Oil Contracts;

(d) Using the same royalty payment methodology, Extraction consistently deducted such Take-or-Pay Fees and other costs from Plaintiffs' and the Class members' oil Royalties;

(e) The Royalty Agreements do not permit Extraction to deduct Take-or-Pay Fees or other like costs it incurs through Oil Contracts it has with third parties from Plaintiffs' and Sub Class members' Royalties; and

(f) Extraction's reported price per barrel for oil is and has been significantly lower than the price per barrel for oil, which Extraction actually sold the oil it produced from wells drilled subject to the Plaintiffs' and the Class members' Royalty Agreements in the DJ Basin.

85.    Extraction has breached the Plaintiffs' and the Class members' Royalty Agreements by failing to properly calculate and pay Royalties on oil produced in the manner described supra.

86.    Plaintiffs and the Class members have sustained substantial damages as a direct consequence of such breaches and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM II FOR RELIEF – "TAKE-OR-PAY FEE" OIL CLASS
### (Breach of Implied Duty to Operate Prudently)

87.    The allegations contained in Paragraphs 1 through 86, inclusive, are restated and incorporated by reference herein.

88.    Under Colorado law, Extraction owes Plaintiffs and the Class members an implied duty to act as a prudent operator, which requires Extraction to engage in conduct reasonably expected of all operators of ordinary prudence, having regard to the interest of both lessor and lessee.

89.    Extraction has breached its implied duty to act as a prudent operator by deducting its Take-or-Pay Fees and other costs of doing business from Plaintiffs' and the Class members' Royalties in the manner described *supra*, and by failing to report such deductions to the Plaintiffs and the Class members.

90.    As a direct consequence of Extraction's breaches of its implied duty to act as a prudent operator, Plaintiffs and the Class members have suffered substantial damages and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM III FOR RELIEF – "TAKE-OR-PAY FEE" OIL CLASS
### (Breach of Good Faith and Fair Dealing)

91.     The allegations contained in Paragraphs 1 through 90, inclusive, are restated and incorporated by reference herein.

92.     Pursuant to the Royalty Agreements and under Colorado law, Extraction has a duty of good faith and fair dealing to Plaintiffs and the Class members.

93.     By failing to properly calculate, report, and pay Royalties to Plaintiffs and the Class members as set forth herein and by concealing improper deductions of, namely, "Take-or-Pay Fees," or other costs Extraction has breached its duty of good faith and fair dealing owed to Plaintiffs and the Class members.

94.     As a direct consequence of Extraction's breach of its implied duty of good faith and fair dealing, Plaintiffs and the Class members have suffered substantial damages and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM IV FOR RELIEF – "TAKE-OR-PAY FEE" OIL CLASS
### (Declaratory Relief)

95.     The allegations contained in Paragraphs 1 through 94, inclusive, are restated and incorporated by reference herein.

96.     A controversy exists between Extraction and Plaintiffs and the Class members regarding the manner in which Royalties for oil production from the wells drilled subject to the Royalty Agreements are to be calculated, reported, and paid to Plaintiffs and the Class members not only for the past, but also in the future.

97.     Plaintiffs and the Class members are entitled to a declaratory judgment against Extraction, which includes the following:

(a) A determination that under the terms of the Royalty Agreements, Royalties paid by Extraction in the future should be paid to Plaintiffs and the Class members without the deduction of Take-or-Pay Fees, or other ordinary costs of doing business;

(b) A determination that by deducting Take-or-Pay Fees, or other costs of doing business from Plaintiffs' and Class members' Royalties without reporting such deductions, Extraction breached its implied duty to operate prudently and for the benefit of the lessors; and

(c) A determination that by deducting Take-or-Pay Fees, and ordinary costs of doing business from Plaintiffs' and Class members' Royalties without reporting such deductions, Extraction breached its implied duty of good faith and fair dealing.

98.     Consistent with the applicable Colorado law, this Court should enter its Order for the declarations requested above.

## CLAIM V FOR RELIEF – "FREE OF COST" OIL SUB CLASS
### (Breach of Contract)

99.     The allegations contained in Paragraphs 1 through 98, inclusive, are restated and incorporated by reference herein.

100.    Extraction has failed to properly pay Royalties to Plaintiffs and the "Free of Cost" Oil Sub Class members on oil production as follows:

(a) Extraction deducts from the Plaintiffs' and the "Free of Cost" Oil Sub Class members' Royalties costs incurred for gathering and transportation oil from the wellhead to the pipeline; and

(b) Plaintiffs' and "Free of Cost" Oil Sub Class members' Royalty Agreements prohibit Extraction from deducting gathering and/or transportation or any other costs incurred between the wellhead and the pipeline from their Royalties.

101.    Extraction has breached the provisions of the applicable Royalty Agreements by failing to properly calculate and pay Royalties on oil production to Plaintiffs and the "Free of Cost" Oil Sub Class members in the manner described *supra*.

102.    Plaintiffs and the "Free of Cost" Oil Sub Class members have sustained substantial damages as a direct consequence of such breaches and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM VI FOR RELIEF – "FREE OF COST" OIL SUB CLASS
### (Declaratory Relief)

103.    The allegations contained in Paragraphs 1 through 102, inclusive, are restated and incorporated by reference herein.

104.    A controversy exists between Extraction and Plaintiffs and the "Free of Cost" Oil Sub Class members regarding the manner in which Royalties for oil production from the wells subject to the Royalty Agreements should have been calculated, reported, and paid to Plaintiffs and the "Free of Cost" Oil Sub Class not only for the past, but also in the future.

105.    Plaintiffs and the "Free of Cost" Oil Sub Class are entitled to a declaratory judgment against Extraction, that under the terms of the Royalty Agreements, Royalties calculated and paid by Extraction on oil production in the future should be paid to Plaintiffs and the "Free of Cost" Oil Sub Class members without the deduction of any post-production costs incurred prior to delivery of the oil into the mainline pipeline.

106.    Pursuant to the applicable Colorado law, this Court should enter its Order for the declarations requested herein.

## CLAIM VII FOR RELIEF – "MARKET PRICE" OIL SUB CLASS
### (Breach of Contract)

107.    The allegations contained in Paragraphs 1 through 106, inclusive, are restated and incorporated by reference herein.

108.    Extraction has failed to properly pay Royalties to Plaintiff Winter Oil and the "Market Price" Oil Sub Class members on oil production as follows:

(a) Extraction has reported, calculated, and paid Royalties on prices per barrel for oil that are significantly lower than the actual prices per barrel upon which Extraction and other operators in the DJ Basin sold barrels of oil simultaneously; and

(b) Winter Oil's and "Market Price" Oil Sub Class members' Royalty Agreements expressly require Extraction to pay Royalties based on the "market," "field," or "field-wide" price for the oil.

109.    Extraction has breached the provisions of the applicable Royalty Agreements by failing to properly calculate and pay Royalties on oil production to Winter Oil and the "Market Price" Oil Sub Class members in the manner described *supra*.

110.    Winter Oil and the "Market Price" Oil Sub Class members have sustained substantial damages as a direct consequence of such breaches and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM VIII FOR RELIEF – "MARKET PRICE" OIL SUB CLASS
### (Declaratory Relief)

111.    The allegations contained in Paragraphs 1 through 110, inclusive, are restated and incorporated by reference herein.

112.    A controversy exists between Extraction and Plaintiff Winter Oil and the "Market Price" Oil Sub Class members regarding the manner in which Royalties for oil produced drilled from the wells subject to the Royalty Agreements should have been calculated, reported, and paid to Winter Oil and the "Market Price" Oil Sub Class members not only for the past, but also in the future.

113.    Winter Oil and the "Market Price" Oil Sub Class members are entitled to a declaratory judgment against Extraction, which includes the following:

(a) A determination that the method utilized by Extraction to calculate and pay oil Royalties to Winter Oil and the "Market Price" Oil Sub Class members under the applicable Royalty Agreements has resulted in an underpayment of the amounts due and owing to Winter Oil and the "Market Price" Oil Sub Class; and

(b) A determination that under the terms of the Royalty Agreements, oil Royalties paid by Extraction in the future should be paid to Winter Oil and the "Market Price" Oil Sub Class members based on market, field, and field wide prices.

114.    Pursuant to the applicable Colorado law, this Court should enter its Order for the declarations requested above.

## CLAIM IX FOR RELIEF – "PROHIBITS DEDUCTIONS" OIL SUB CLASS
### (Breach of Contract)

115.    The allegations contained in Paragraphs 1 through 114, inclusive, are restated and incorporated by reference herein.

116.    Extraction has failed to properly pay royalties to Plaintiff Winter Oil and the "Prohibits Deductions" Oil Sub Class members on oil production in the following respects:

(a) By deducting post-production costs incurred to market the oil after it is severed from the wellhead;

(b) By failing to pay Royalties on the full price at the point of sale for the oil sold to third-party purchasers; and

(c) By engaging in transactions to reduce the amount of the Royalties paid to Winter Oil and the "Prohibits Deductions" Oil Sub Class by deducting the costs incurred to market the oil after it is severed from the wellhead.

117.    Extraction continues to breach the applicable Royalty Agreements by failing to properly calculate and pay Royalties to Winter Oil and the "Prohibits Deductions" Oil Sub Class members in the manner described herein.

118.    Winter Oil and the "Prohibits Deductions" Gas Sub Class members have sustained substantial damages as a direct consequence of such breaches and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

## CLAIM X FOR RELIEF – "PROHIBITS DEDUCTIONS" OIL SUB CLASS
### (Declaratory Relief)

119.    The allegations contained in Paragraphs 1 through 118, inclusive, are restated and incorporated by reference herein.

120.    A controversy exists between Extraction and Plaintiff Winter Oil and the "Prohibits Deductions" Oil Sub Class members regarding the manner in which Royalties for oil produced from the wells drilled subject to the Royalty Agreements should have been calculated and paid to Winter Oil and the "Prohibits Deductions" Oil Sub Class not only for the past, but also in the future.

121.    Winter Oil and the "Prohibits Deductions" Oil Sub Class members are entitled to a declaratory judgment against Extraction, which includes the following:

a)  A determination that the applicable Royalty Agreements prohibit the deduction of post-production marketability costs in the calculation and payment of Royalties to be paid to Winter Oil and the "Prohibits Deductions" Oil Sub Class;

b)  A determination that the method utilized by Extraction to calculate the amount of Royalties to be paid to Winter Oil and the "Prohibits Deductions" Oil Sub Class members under the applicable Royalty Agreements has resulted in an underpayment of the amounts due and owing to Winter Oil and the "Prohibits Deductions" Oil Sub Class under the applicable Royalty Agreements; and

c)  A determination that under the terms of the Royalty Agreements and Colorado law, all Royalties paid on oil in the future should be paid to Winter Oil and the "Prohibits Deductions" Oil Sub Class members based on the actual price paid for the oil at the point of sale, without the deduction of any costs incurred to market the oil after it is severed from the wellhead.

122.    Pursuant to the applicable Colorado law, this Court should enter its Order for the declarations requested above.

## CLAIM XI FOR RELIEF – "SILENT" OIL SUB CLASS
### (Breach of Contract – Including the Implied Duty to Market)

123.    The allegations contained in Paragraphs 1 through 122, inclusive, are restated and incorporated by reference herein.

124.    Extraction has failed to properly pay Royalties to Plaintiffs and the "Silent" Oil Sub Class members by failing to calculate and pay Royalties on the full market value of the oil at the first commercial market.

125.    Extraction has breached the provisions of the applicable Royalty Agreements by failing to properly calculate and pay Royalties to the Plaintiffs and the "Silent" Oil Sub Class members, in the manner described herein.

## CLAIM XII FOR RELIEF – "SILENT" OIL SUB CLASS
### (Declaratory Relief)

126.    The allegations contained in Paragraphs 1 through 125, inclusive, are restated and incorporated by reference herein.

127.     A controversy exists between Extraction and Plaintiffs and the "Silent" Oil Sub Class members regarding the manner in which Royalties for oil produced from the wells subject to the Royalty Agreements should be calculated and paid to Plaintiffs and the "Silent" Oil Sub Class members not only for the past, but also in the future.

128.    Plaintiffs and the "Silent" Oil Sub Class members are entitled to a declaratory judgment against Extraction, which includes the following:

(a) A determination that the implied duty to market under Colorado law is applicable to each of the Royalty Agreements in the "Silent" Oil Sub Class;

(b) A determination that the method utilized by Extraction to calculate the amount of Royalties to be paid to Plaintiffs and the "Silent" Oil Sub Class members under the applicable Royalty Agreements has resulted in an underpayment of the amounts due and owing under the Royalty Agreements; and

(c) A determination that under the terms of the Royalty Agreements and Colorado law, all Royalties to be paid to Plaintiffs and the "Silent" Oil Sub Class members should be based on the full price of the oil after it is a delivered to the first commercial market without deduction of post-production costs which are being incurred to place the oil in a marketable condition and to deliver the oil to the first commercial market.

129.    Pursuant to the applicable Colorado law, this Court should enter its Order for the declarations requested above.

### CLAIM XIII FOR RELIEF – "PROHIBITS DEDUCTIONS" GAS SUB CLASS
**(Breach of Contract)**

130.    The allegations contained in Paragraphs 1 through 129, inclusive, are restated and incorporated by reference herein.

131.    Extraction has failed to properly pay royalties to Plaintiff Winter Oil and the "Prohibits Deductions" Gas Sub Class members on natural gas production in the following respects:

(a) By deducting post-production costs incurred for gathering, compression, dehydration, treatment, processing, fractionating, and other marketing fees;

(b) By failing to pay Royalties on the full price at the point of sale for the natural gas and natural gas liquid products sold to third-party purchasers; and

(c) By engaging in transactions to reduce the amount of the Royalties paid to Winter Oil and the "Prohibits Deductions" Gas Sub Class by purporting to sell the residue gas and natural gas liquid products for an artificial sales price or netback price.

132.    Extraction continues to breach the applicable Royalty Agreements by failing to properly calculate and pay Royalties to Winter Oil and the "Prohibits Deductions" Gas Sub Class members in the manner described herein.

133.    Winter Oil and the "Prohibits Deductions" Gas Sub Class members have sustained substantial damages as a direct consequence of such breaches and are entitled to judgment in their favor and against Extraction in an amount to be determined at trial.

### CLAIM XIV FOR RELIEF – "PROHIBITS DEDUCTIONS" GAS SUB CLASS
**(Declaratory Relief)**

134.    The allegations contained in Paragraphs 1 through 133, inclusive, are restated and incorporated by reference herein.

135.    A controversy exists between Extraction and Plaintiff Winter Oil and the "Prohibits Deductions" Gas Sub Class members regarding the manner in which Royalties for natural gas and natural gas liquids produced from the wells drilled subject to the Royalty Agreements should have been calculated and paid to Winter Oil and the "Prohibits Deductions" Gas Sub Class not only for the past, but also in the future.

136.    Winter Oil and the "Prohibits Deductions" Gas Sub Class members are entitled to a declaratory judgment against Extraction, which includes the following:

a)  A determination that the applicable Royalty Agreements prohibit the deduction of post-production costs in the calculation and payment of Royalties to be paid to Winter Oil and the "Prohibit Deductions" Gas Sub Class;

b)  A determination that the method utilized by Extraction to calculate the amount of Royalties to be paid to Winter Oil and the "Prohibits Deductions" Gas Sub Class members under the applicable Royalty Agreements has resulted in an underpayment of the amounts due and owing to Winter Oil and the "Prohibits Deductions" Gas Sub Class under the applicable Royalty Agreements; and

c)  A determination that under the terms of the Royalty Agreements and Colorado law, all Royalties paid on natural gas and natural gas liquid products in the future should be paid to Winter Oil and the "Prohibits Deductions" Gas Sub Class members based on the actual price paid for the natural gas and natural gas liquids at the point of sale.

137.    Pursuant to the applicable Colorado law, this Court should enter its Order for the declarations requested above.

## CLAIM XV FOR RELIEF
### (Accounting)

138.    The allegations contained in Paragraphs 1 through 137, inclusive, are restated and incorporated by reference herein.

139.    Extraction and its agents are in exclusive control of the information required to calculate and report the amounts that Extraction has wrongfully deducted and failed to properly report from Plaintiffs', Class members', and the Sub Class members' Royalties.

140.    Without such information, Plaintiffs and the Class cannot determine the amount of Extraction's wrongful benefit from allocation of fees and costs to Plaintiffs that were not and are not permitted under the operative Royalty Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    An Order that the claims asserted herein by Plaintiffs, on behalf of themselves and the defined Class and Sub Classes, should be certified as class actions pursuant to C.R.C.P. 23, that Plaintiffs C & M Resources and Winter Oil, LLC be appointed as Class and Sub Class Representatives, and that Plaintiffs' counsel, Lance Astrella, Stacy Burrows, and George Barton, be appointed Class Counsel;

B.    A judgment in favor of Plaintiffs and the Class against Extraction for an accounting as to all amounts wrongfully withheld from or deducted from the oil and natural gas Royalties paid to Plaintiffs and the Class and Sub Classes;

C.    A judgment in favor of Plaintiffs and the "Take-or-Pay Fee" Oil Class against Extraction for damages suffered on oil production as a result of Extraction's breach of the Royalty Agreements, Extraction's breach of its implied duty to operate prudently, and Extraction's breach of its implied covenant of good faith and fair dealing;

D.    A judgment in favor of Plaintiffs and the "Free of Cost" Oil Sub Class against Extraction for damages suffered on oil production as a result of Extraction's breach of the Royalty Agreements;

E.    A judgment in favor of Plaintiffs and the "Market Price" Oil Sub Class against Extraction for damages suffered on oil production as a result of Extraction's breach of the Royalty Agreements;

F.      A judgment in favor of Plaintiffs and the "Silent" Oil Sub Class against Extraction for damages suffered on oil production as a result of Extraction's breach of the Royalty Agreements;

G.      A judgment in favor of Winter Oil and the "Prohibits Deductions" Oil Sub Class against Extraction for damages suffered on oil production as a result of Extraction's breach of the Royalty Agreements;

H.      A judgment in favor of Winter Oil and the "Prohibits Deductions" Gas Sub Class against Extraction for damages suffered on natural gas production as a result of Extraction's breach of the Royalty Agreements;

I.      An Order setting forth the declarations sought herein for the Class and Sub Classes;

J.      An accounting, including an accounting showing the true value of the royalties that should have been paid to the Plaintiffs and the members of the proposed Class and Sub Classes;

K.      An award of prejudgment interest on all royalty underpayments at the Colorado statutory rate of eight percent per annum, compounded annually, pursuant to C.R.S. 5-12-102(1)(b);

L.      An award of court costs; and

M.      Such further relief as the Court deems just.

## <u>JURY DEMAND</u>

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED: December 29, 2023

*/s/Stacy A. Burrows*
Stacy A. Burrows, Co. Bar No. 49199
Barton and Burrows, LLC
5201 Johnson Drive, Ste. 110
Mission, KS 66205
(913) 563-6253
Fax: (913) 563-6259

-and-

Lance F. Astrella, Co. Bar No. 5183
Astrella Law P.C.
1600 Broadway, Suite 1070
Denver, CO 80202
(303) 292-9021
Fax: (303) 296-6347

**ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2023, a true and correct copy of the foregoing was served on the following via the Integrated Colorado Court E-filing System to the following:

Matthew Arentson
Justin L. Cohen
Michael P. Smith
Brownstein Hyatt Farber Scheck, LLP
675 15th Street, Ste. 2900
Denver, CO 80202

*/s/ Stacy A. Burrows*