IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00037-NYW-MEH

C & M Resources, LLC, and Winter Oil, LLC,
individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

Extraction Oil and Gas, Inc. f/k/a Extraction Oil and Gas, LLC

    Defendant.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO EXTRACTION'S
MOTION FOR JUDGEMENT ON THE PLEADINGS**

---

Extraction Oil and Gas, Inc.'s ("Extraction") Motion for Judgment on the Pleadings ("Motion") should be denied for several reasons. First, the Court should rule on Plaintiffs' Motion to Remand (ECF No. 18) before Extraction's Motion, consistent with the recognized rule that a motion for remand should be resolved before a Rule 12 motion. Second, Plaintiffs are not required to exhaust their administrative remedies before the Colorado Energy and Carbon Management Commission (the "Commission") because: (1) Extraction waived its affirmative defense of Plaintiffs' "failure to exhaust;" (2) this case involves a *bona fide* contractual dispute regarding Extraction's royalty payment obligations under the applicable class leases, thereby precluding the Commission from having jurisdiction; and (3) exhaustion with the Commission is futile. Finally, collateral estoppel does not bar the Plaintiffs from adjudicating their claims in a court of law.

## FACTUAL BACKGROUND

Plaintiffs filed their original complaint in Denver District Court in December 2019. (**Ex. 1**, Complaint in Case No. 2019cv34705 (the "State Court Case")). Before Extraction filed a response, on March 12, 2020, the party's filed their "Joint Motion to Stay this Case While Issues Affecting this Court's Subject Matter Jurisdiction are Resolved on Appeal." (Mot., Ex. G, "Joint Motion"). In the Joint Motion, the parties agreed that a decision in the appellate case captioned *Antero Res. Corp. v. Airport Land Partners, Ltd*. ("*Airport Land*") would "almost certainly provide guidance and likely dictate whether [the District Court] has subject matter jurisdiction." (Mot., Ex. G, p. 3). The parties agreed that the "issue of whether Plaintiffs must exhaust their administrative remedies through the [Commission] before bringing the claims in this case" was the "central" issue in both the State Court Case and in *Airport Land*. (Mot., Ex. G, p. 3). The parties' Joint Motion was granted on March 14, 2020. (Mot., Ex. H).

On June 3, 2021, the Colorado Court of Appeals issued an unpublished decision in *Airport Land*, which affirmed the Commission's determination that it lacked jurisdiction to adjudicate

1

royalty underpayment disputes when the parties disagree over "the extent of [a royalty owners'] legal entitlement to further payments under the royalty agreements." (**Ex. 2**, June 3, 2021 opinion from the Colorado Court of Appeals, p. 20). On September 9, 2021, based on the Court of Appeals' decision, Plaintiffs filed a motion to lift the stay in the State Court Case. (**Ex. 3**, September 9, 2021 Motion to Lift Stay in the State Court Case). The Denver District Court denied the Plaintiffs' motion based on the likelihood that the Colorado Supreme Court would agree to hear the *Airport Land* appeal. (**Ex. 4**, October 29, 2021 Order re: Motion to Lift Stay; **Ex. 5**, December 7, 2021 Order extending Stay in the State Court Case). On January 10, 2022, the Colorado Supreme Court granted *certiorari* in *Airport Land* to determine whether "the mere existence of a disagreement over the extent of Royalty Owners' legal entitlements to further payments under the royalty agreements; or (2) the existence of terms that are "subject to legal debate," constitutes a *bona fide* dispute over the interpretation of a contract for payment under section 34-60-118.5(5), C.R.S. (2021)." (**Ex. 6**, January 10, 2022 Order granting petition for Writ of Certiorari in *Airport Land*). Extraction then moved to continue the stay of the State Court Case while *Airport Land* was pending. (**Ex. 7**, Parties' February 7, 2022 Joint Status Report and Extraction's Motion to Continue Stay, p. 4). In its request, Extraction reiterated that the "Colorado Supreme Court will . . . almost certainly provide guidance and likely dictate whether this Court has subject matter jurisdiction." (Ex. 7, p. 4).

After the Colorado Supreme Court decided *Airport Land* on March 27, 2023, the parties notified the Denver District Court and confirmed their intention to contact the court to set this matter for a status conference. (**Ex. 8**, April 18, 2023 Joint Status Report). On May 24, 2023, the Denver District Court lifted the stay and directed the Plaintiffs to prepare and file their amended complaint. (Mot., Ex. I). Based on the Colorado Supreme Court's March 27, 2023 *Airport Land*

2

decision, Extraction conceded Plaintiffs were not required seek relief in the Commission, and agreed to allow the Plaintiff to file their Second Amended Class Action Complaint. (Mot., Ex. I). Extraction then sought to dismiss Plaintiffs' Second Amended Class Action Complaint, but Extraction did not allege in that motion that the Plaintiffs were required to exhaust their administrative remedies, or that the district court did not have jurisdiction. (**Ex. 9**, Motion to Dismiss). Rather, Extraction argued that Plaintiffs' Second Amended Class Complaint should be dismissed based on Plaintiffs' alleged failure to state a claim for relief. (Ex. 9).

Extraction's motion to dismiss was denied on October 26, 2023 (**Ex. 10**, Order Denying Extraction's Motion to Dismiss), and Extraction filed its Answer to the Plaintiffs' Second Amended Class Action Complaint on November 22, 2023. (**Ex. 11**, Extraction's Answer). In its Answer, Extraction did not raise a "failure to exhaust" affirmative defense or any collateral estoppel affirmative defense. (Ex. 11, pp. 16-17). Plaintiffs then served written discovery on Extraction consistent with the Case Management Order. (**Ex. 12**, Case Management Order; Mot., Ex. J). With Extraction's consent, on December 29, 2023, Plaintiffs filed a Third Amended Class Action Complaint, which clarified that Extraction is the proper defendant, and did not change any of the substantive allegations. (**Ex. 13**, December 29, 2023 Third Amended Class Action Complaint). At no point between the March 27, 2023 *Airport Land* decision and February 2, 2024, did Extraction allege that Plaintiffs are required to exhaust their administrative remedies.

**ARGUMENT**

**I.     THIS COURT SHOULD RULE ON PLAINTIFFS' MOTION TO REMAND BEFORE EXTRACTION'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The Plaintiffs January 29, 2024 Motion to Remand is still pending. (ECF No. 18). Generally, a motion to remand must be resolved before a Rule 12 motion because if remand is proper, the state court should decide the motion. *E.g. H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F.

3

Supp. 2d 671, 675 (S.D. Ohio 2014); *Robinson v. Wheeler*, 2016 WL 593624, at *2 (N.D. Miss. Feb. 12, 2016). There is no reason for the Court to deviate from the general rule here. If Plaintiffs' Motion to Remand is granted, then Extraction's Motion becomes moot.

Extraction alleges that the Court should first decide the present Motion based on its contention that the Plaintiffs' duty to exhaust administrative remedies implicates this Court's jurisdiction. (Mot., p. 5). However, Extraction's position is erroneous as a matter of law. The Tenth Circuit has recently held that a failure to exhaust administrative remedies is not a jurisdictional defect, but instead must be raised as an affirmative defense. *Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1186 (10th Cir. 2018) (a party's failure to exhaust administrative remedies "does not bar a federal court from assuming jurisdiction over a claim."). Because this Court's jurisdiction is not implicated by Extraction's "failure to exhaust" argument, this Court should first rule on the Plaintiffs' pending Motion to Remand before addressing Extraction's present Motion.

**II.   EXTRACTION HAS WAIVED THE AFFIRMATIVE DEFENSE OF FAILURE TO EXHAUST BY NOT RAISING IT IN ITS ANSWER OR IN ITS INITIAL MOTION TO DISMISS FILED IN THE DENVER DISTRICT COURT.**

As evidenced by both its Answer and its futile attempt to dismiss Plaintiffs' Class Action Complaint based on Rule 12(b)(5), Extraction has conceded that the *Airport Land* decision confirms that the Denver District Court has jurisdiction to adjudicate Plaintiffs' royalty underpayment claims. Additionally, the Tenth Circuit's 2018 opinion in *Lincoln* confirms that a failure to exhaust administrative remedies is not a jurisdictional defect, and instead it is "merely an affirmative defense subject to principles of waiver and estoppel. *Lincoln*, 900 F.3d at 1185 and n. 11). Thus, Extraction's newfound contention that the Plaintiffs are required to exhaust their administrative remedies does not implicate this Court's subject matter jurisdiction, and the present Motion is nothing more than a Rule 12 motion where Extraction is attempting to dismiss the Plaintiffs' claims based on an affirmative defense. *Id*.

4

While the Tenth Circuit's decision in *Lincoln* relates to a party's duty to exhaust administrative remedies under the Americans with Disabilities Act ("ADA"), the holding applies to all situations where a party seeks to assert a "failure to exhaust" defense. *Lincoln*, 900 F.3d at 1181. As the Supreme Court has recently clarified, there are an array of statutory schemes which provide "mandatory claims processing rules" through an administrative agency, but these rules are "non-jurisdictional" and may be waived if not properly asserted as an affirmative defense. *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019). A duty to exhaust administrative remedies is only considered a jurisdictional prerequisite when the statutory scheme at issue "clearly states that a prescription counts as jurisdictional." *Id*.

Extraction cites the Colorado Oil and Gas Conservation Act ("Act") to support its position that its "failure to exhaust" argument is a jurisdictional defect. (Mot., p. 6). However, like the statutory scheme in *Lincoln*, the Act makes no mention of any duty to seek administrative relief before bringing suit, and there is nothing in the Act discussing a court's authority to hear a particular case. *See generally* C.R.S. 34-60-101, *et seq*. Instead, the Act merely states that "before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the Commission shall determine whether a *bona fide* dispute exists regarding the interpretation of a contract defining the rights and obligations of the payer and payee." C.R.S. 34-60-118.5(5.5). "If the Commission finds that such a dispute exists, the Commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court." C.R.S. 34-60-118.5(5.5). This provision only contemplates the Commission's jurisdiction to hear disputes, and nothing in the Act requires a Commission decision before the district court has jurisdiction.

Under *Lincoln*, Extraction's argument is an affirmative defense which can be waived and does not implicate the Court's jurisdiction. *Lincoln*, 900 F.3d at 1185-86, n. 10 and n. 11. A party

5

usually waives an affirmative defense by failing to plead it. *Burke v. Regalado*, 935 F.3d 960, 1040 (10th Cir. 2019). Fed. R. Civ. P. 8(c) provides that "in responding to a pleading a party must affirmatively state any avoidance or affirmatives defense." Extraction did not identify a "failure to exhaust" affirmative defense in its Answer. (Ex. 11, pp. 16-17). Extraction also failed to identify any "failure to exhaust" defense in its Motion to Dismiss. (Ex. 9). Finally, Extraction did not raise the "failure to exhaust" defense in the parties' joint proposed Case Management Order, even though the parties described the procedural history of the case and duty to exhaust administrative remedies. (Ex. 12, pp. 2-5). Further, the availability of the "failure to exhaust" defense was known to Extraction well before it filed its Answer and submitted the Case Management Order. Indeed, this case was stayed more than 3 years while *Airport Land* worked its way through the Commission, the Denver District Court, and the Colorado Appellate Court system, and Extraction stated on multiple occasions that the Colorado Supreme Court's decision in *Airport Land* would "almost certainly" be dispositive of the Plaintiffs' duty to exhaust administrative. (*See* Exs. 7 and 8; Mot., Ex. G). After *Airport Land* was decided on March 27, 2023, Extraction agreed to lift the stay, filed a motion to dismiss, filed its Answer after the motion to dismiss was denied, and continued to litigate this case for ten months before raising its defense. By agreeing to a stay pending the decision in *Airport Land*, Extraction agreed to be bound by its decision, and as a result, waived its affirmative defense of "failure to exhaust." *Lincoln*, 900 F.3d at 1187.

Indeed, Plaintiffs would be severely prejudiced by being forced to now argue Extraction's "failure to exhaust" defense. Nearly a year has passed since *Airport Land* was decided, and at no point did Extraction ever indicate that *Airport Land* was not dispositive. It instead litigated the case in the Denver District Court for nearly a year, and then sought to remove the case only after

6

receiving an unfavorable ruling on its Motion to Dismiss. (Ex. 10). Extraction has therefore waived its "failure to exhaust" defense, and its Motion should be denied.

### III. THE PLAINTIFFS HAVE NO DUTY TO SEEK RELIEF BEFORE THE COMMISSION BECAUSE THIS CASE INVOLVES A *BONA FIDE* CONTRACT DISPUTE AND RELIEF BEFORE THE COMMISSION WOULD BE FUTILE

Plaintiffs have no duty to exhaust their administrative remedies before seeking relief in district court, and even if such a duty did exist, exhaustion is not required because it would be futile. Extraction cites C&M I, C&M II, and the Tenth Circuit's recent decision in *Boulter v. Noble Inc.,* 74 F.4th 1285 to support its position that Plaintiffs must first seek relief from the Commission before this Court has jurisdiction. However, none of these courts had the benefit of the *Airport Land* decision. *See Boulter*, 74 F.4th at 1288. Recognizing that the *Airport Land* decision is contrary to its position, Extraction urges this Court to simply ignore the binding precedent by suggesting that *Airport Land* is irrelevant because it was issued after Plaintiffs' initial complaint. (Mot., pp. 7-9). Extraction ignores the fact that the State Court Case was stayed for over 3 years because the parties agreed that *Airport Land* would "almost certainly provide guidance and likely dictate whether this Court has subject matter jurisdiction over this matter." (Mot., Ex. G, p. 3).

Extraction's sudden about-face on the importance of *Airport Land* has nothing to do with the timing of the *Airport Land* decision and everything to do with the fact that the decision confirms that Plaintiffs are not required to seek administrative relief. Unlike the complaints at issue in *Boulter,* which were filed prior to *Airport Land*, the operative complaint Extraction seeks to dismiss was filed by agreement of the parties on December 29, 2023, well after the *Airport Land* decision was issued. *Boulter*, 74 F.4th at 1290; (Ex. 13). Thus, this Court is required to consider the *Airport Land* decision when evaluating Extraction's "fail to exhaust" defense.

7

### A. The *Airport Land* Decision Confirms that Plaintiffs are Not Required to Seek Relief Before the Commission Before Seeking Relief in District Court.

As Extraction predicted in February 2022, the Colorado Supreme Court's decision in *Airport Land* provided guidance on the "central" issue of whether Plaintiffs are required to seek administrative relief with the Commission before seeking relief in a district court. (Ex. 7, p. 5). When the Colorado Supreme Court agreed to hear *Airport Land*, it framed the issue as follows:

> Whether the court of appeals erred in finding that either: (1) the mere existence of a disagreement over the extent of Royalty Owners' legal entitlements to further payments under the royalty agreements; or (2) the existence of terms that are "subject to legal debate," constitutes a *bona fide* dispute over the interpretation of a contract for payment under section 34-60-118.5(5), C.R.S. (2021).

(Ex. 6, p. 2). Thus, the issue decided in *Airport Land* was the broad legal issue of what constitutes a "*bona fide* dispute," and not the narrow issue of whether the Commission properly declined jurisdiction over those five royalty underpayment disputes involved in the *Airport Land* appeal. Ultimately, the Colorado Supreme Court found that: (1) once the parties "whose mineral interests are the subject of a lease agreement have raised a **nonfrivolous, genuine dispute** about a contract term," a *bona fide* contractual dispute exists, and (2) the Commission is not required to make the threshold determination that a *bona fide* dispute exists because doing so would "run afoul" of the Act's directive that the Commission shall not engage in contract interpretation. *Antero Res. Corp. v. Airport Land Partners, Ltd*, 526 P.3d 204, 209-11 (Colo. 2023).

#### 1. The Act Precludes the Commission from Adjudicating Royalty Underpayment Disputes Involving a Written Contract.

Under *Airport Land*, the Act provides that the Commission's jurisdiction is limited to determining "the payment due date [], whether any circumstances exist that would justify a delay in payment[], and the amount due, including interest, if any. § 34-60-118.5(5)." *Id.* at 209. The Commission's jurisdiction over these three discrete issues only exists "in the absence of a *bona*

8

*fide* dispute over the interpretation of a contract." *Id*. at 209. The Colorado Supreme Court explains that the Commission's jurisdictional limitation "created by the existence of a '*bona fide* dispute over the interpretation of a contact'" does not first require the Commission to engage in contract interpretation to determine the "*bona fides*" of a dispute. *Id*. at 210-11. When reviewing the Act as a whole, the Colorado Supreme Court determined that "[t]he most sensible reading of these provisions together is that once parties whose mineral interests are the subject of a lease agreement have raised **a nonfrivolous, genuine dispute** about a contract term, jurisdiction to interpret that contract lies with the courts, and not with" the Commission. *Id*. at 211 (emphasis added). The Act's reference to "*bona fide* contract dispute" served as a mechanism to divest the Commission of jurisdiction and does not limit a district court's ability to adjudicate royalty underpayment claims involving a contract. *Id*. Thus, the Commission lacks jurisdiction over royalty underpayment disputes involving a written contract as a matter of law.

### 2. The Act Does Not Require a Royalty Owner to Obtain an Order from the Commission Declining Jurisdiction Before Seeking Relief in District Court.

Nothing in *Airport Land* suggests that a party is required to seek a Commission determination that a *bona fide* contractual dispute exists before seeking relief in district court. Instead, the Colorado Supreme Court held that the lower court had correctly determined that the Commission "does not have jurisdiction to interpret any royalty agreement to determine the propriety of disputed post-production deductions." *Airport Land*, 526 P.3d at 211). The Colorado Supreme Court added that the Act's directive for the Commission to determine whether a *bona fide* dispute exists and to decline jurisdiction if it does, "cannot be read to require [the Commission] to first engage in contract interpretation to assess the *bona fides* of the dispute" because it would "run afoul of [the Act's] command that nothing in this section shall be construed to require the [Commission] to interpret contract." *Airport Land*, 536 P.3d at 210. In other words, requiring the

9

Commission to determine the *bona fides* of a dispute in the first place would require the Commission to engage in contract interpretation, which the Act specifically precludes. *Id.*

Further, on the date *Airport Land* was issued, there were at least 19 pending lawsuits in Colorado state courts in which 84 royalty owner plaintiffs were asserting breach of contract claims against a natural gas producer based upon the producer's improper deduction of post-production costs, and in which none of the plaintiffs had exhausted their breach of contract claim in the Commission. Each of those 19 lawsuits was stayed pending the *Airport Land* Decision.[1]  Soon after the *Airport Land* decision was issued, the seven district court judges presiding over those 19 lawsuits lifted the stay of litigation orders and permitted each of those lawsuits to proceed in the district court, without requiring any of the 84 royalty owners to first exhaust their breach of contract claims with the Commission. Moreover, each of those state court lawsuits is continuing to be prosecuted in the Colorado district courts or have since settled, without any party requesting

---

[1] **Ex. 14**, Case No. 2020CV030713, Denver District Court; November 3, 2020 Order to Stay, May 26, 2023 Order to Lift Stay; **Ex. 15**, Case No. 2018CV030117, Garfield County District Court; November 28, 2018 Motion to Stay, May 5, 2023 Order to Lift Stay; **Ex. 16**, Case No. 2018CV030156, Garfield County District Court; October 3, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 17**, Case No. 2018CV030114, Garfield County District Court; November 28, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 18**, Case No. 2018CV030155, Garfield County District Court; October 3, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 19**, Case No. 2018CV030123, Garfield County District Court; November 28, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 20**, Case No. 2018CV030121, Garfield County District Court; November 28, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 21,** Case No. 2016CV030281, Garfield County District Court; August 16, 2018 Motion to Stay, May 31, 2023 Order to Lift Stay; **Ex. 22**, Case No. 2016CV030260, Garfield County District Court; August 16, 2018 Motion to Stay, May 31, 2023 Order to Lift Stay; **Ex. 23**, Case No. 2018CV030069, Garfield County District Court; August 16, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 24**, Case No. 2019CV030011, Garfield County District Court; January 12, 2022 Joint Status Report and Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 25**, Case No. 2018CV030119, Garfield County District Court; November 28, 2018 Motion to Stay, April 12, 2023 Order to Lift Stay; **Ex. 26**, Case No. 2017CV030081, Garfield County District Court; August 16, 2018 Motion to Stay, May 31, 2023 Order to Lift Stay; **Ex. 27**, Case No. 2021CV033358, District Court, City and County of Denver; March 1, 2022 Motion to Stay, April 18, 2023 Joint Status Report, April 21, 2023 Order for Joint Status Report; **Ex. 28**, Case No. 2021CV031289, Denver District Court; February 15, 2022 Joint Status Report and Motion to Stay, April 27, 2023 Order to Lift Stay; **Ex. 29**, Case No. 2017CV030086, Garfield County District Court; August 16, 2018 Motion to Stay, May 31, 2023 Order to Lift Stay; **Ex. 30**, Case No. 2013CV030281, Garfield County District Court; August 16, 2018 Motion to Stay, May 31, 2023 Order to Lift Stay; **Ex. 31**, Case No. 2022CV031295, District Court, City and County of Denver; May 26, 2022 Motion to Stay, May 3, 2023 Order to Lift Stay; **Ex. 32**, Case No. 2017CV030209, Garfield County District Court; January 19, 2018 Motion to Stay, May 30, 2023 Order to Lift Stay.

that any of the 84 royalty owner plaintiffs should be required to exhaust their royalty underpayment breach of contract claims in the Commission. (Exs. 14-32).

Clearly, a *bona fide* dispute regarding Extraction's royalty payment obligations exists here. The *Airport Land* decision clarifies that a "*bona fide* dispute" is a low bar and exists when parties "raise a nonfrivolous, genuine dispute." *Airport Land*, 526 P.3d at 210. As the Denver District Court found when denying Extraction's Motion to Dismiss, "a dispute remains at this stage of the proceedings" at the Commission does not have jurisdiction. (Ex. 10, p. 2). Further, the Commission recently declined jurisdiction in two matters finding that a *bona fide* contractual dispute existed when the royalty owners alleged that their respective lessees had underpaid royalties owed on oil. (**Ex. 33**, September 15, 2023, Order from the Commission; **Ex. 34**, November 7, 2023 Order From the Commission). The royalty owners in both matters alleged that the lessees had underpaid royalties based on a provision requiring oil royalties to be paid "free of cost in the pipeline," or some variation thereof. (Ex. 33, p. 1; Ex. 34, p. 1). The Commission found that the "particular dispute is nearly identical to the one analyzed in *Airport Land*, and therefore a *bona fide* contract dispute exists that relieves the Commission of subject matter jurisdiction." (Ex. 33, p. 4). The Commission also found that even if the lease was unambiguous, it could not exercise jurisdiction because making such a determination would require the Commission to engage in contract interpretation. (Ex. 34, p. 8). Thus, a *bona fide* dispute exists between the parties regarding Extraction's royalty payment obligations under the applicable royalty agreements, and Plaintiffs are under no duty to seek that determination from the Commission prior to seeking relief in a court of law.

B.  **Seeking Relief Before the Commission would Clearly be Futile.**

As the Colorado Supreme Court correctly states in *Airport Land*, the Commission "has never accepted jurisdiction to adjudicate a dispute over contract terms." *Airport Land*, 526 P.3d at

11

207. The Commission is not likely to change course, especially after the Colorado Supreme Court affirmed the Commission's decision that it did not have jurisdiction to adjudicate the disputes relating to the five oil and gas leases agreement at issue in *Airport Land*. Moreover, the Commission has stated a categorical rule with respect to any "dispute regarding the payment of royalties" in its Hearing and Applications Process Guidebook, which states, without qualification, that "the Commission does not have jurisdiction to resolve the dispute if the dispute arises out of a contract." (**Ex. 35**, Commission Hearings and Applications Process Guidebook, p. 7).

Both federal and state court precedent dictates that exhaustion of administrative remedies is unnecessary when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." *See Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't*, 621 F.3d 1275, 1281 (10th Cir. 2010); *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998); *City and County of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1213 (Colo. 2000). Thus, a district court has jurisdiction to determine whether a plaintiff seeking judicial relief is not required to first exhaust administrative remedies because it is clear beyond a reasonable doubt that exhaustion would be futile. *See, United Air Lines*, 8 P.3d at 1213. This exception extends to situations where the administrative agency "has stated a categorical rule to apply in a group of cases, rendering exhaustion futile." *Id*. Extraction acknowledges this exception in its Motion but provides no reason as to why the Commission would change course and decide to exercise jurisdiction here. (Mot., pp. 13-14). The fact of the matter is: (1) the Commission has never agreed to hear a dispute involving the interpretation of a contract; (2) its longstanding practice was affirmed by the Colorado Supreme Court in *Airport Land*; and (3) it has provided a categorical rule that it "does not have jurisdiction to resolve the dispute if the dispute arises out of a contract." (Ex. 35). Additionally, the Commission Orders declining

jurisdiction, cited above, involve nearly identical claims for oil royalty underpayments. (Exs. 33 and 34). Thus, seeking relief before the Commission would be futile.

### IV. PLAINTIFFS ARE NOT COLLATERALLY ESTOPPED FROM PROCEEDING WITH THEIR CASE.

Extraction's argument that Plaintiffs are "collaterally estopped from arguing that their case turns on a dispute over contractual interpretation" because of the district court decisions in C&M I and C&M II is fundamentally flawed. (Mot., pp. 7-8). Extraction ignores that collateral estoppel is a judicially created equitable defense that can be waived, and its application is completely discretionary. *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 48 (Colo. 2001). The policy reasoning behind collateral estoppel is to "prevent encore" and recognizes that it will not preclude litigation for a "highly technical reason," and does not need to be applied in every case. *Morgan v. City of Rawlins*, 792 F.2d 975, 979 (10th Cir. 1986); *W. Grp. Nurseries, Inc. v. Pomeranz*, 867 P.2d 12, 15 (Colo. App. 1993). Further, collateral estoppel is inapplicable if one "judgment is inconsistent with another judgment." *W. Grp. Nurseries,* 867 P.2d at 15. Additionally, collateral estoppel is an affirmative defense that is generally waived if it is not identified in an answer. *Laurienti v. Am. Alternative Ins. Corp.,* 2019 WL 6837999, at *1 (D. Colo. Dec. 16, 2019).

A cursory review of the procedural history necessitates a finding that collateral estoppel is inappropriate. Extraction was aware of the decisions in C&M I and II when served with the original complaint in 2019. Nevertheless, Extraction agreed to a stay of this case for over three years while the *Airport Land* appeal worked its way through the Colorado Appellate Court system. (Mot., Ex. G). At no point did Extraction ever assert that C&M I and II, which were dismissed without prejudice, had any preclusive effect. (Mot., Exs. B and D). Further, even after *Airport Land* was issued, Extraction never raised collateral estoppel in the State Court Case. It did not raise collateral estoppel when it agreed to lift the stay; it did not raise the issue when it filed its initial motion to

13

dismiss; and it did not identify collateral estoppel as one of the twelve affirmative defenses listed in its Answer. (Mot, Ex. I; Ex. 9; Ex. 11).

These circumstances are completely different than those in *Boulter* where the defendants asserted a collateral estoppel through their initial motion to dismiss. *Boulter*, 74 F.4th at 1287-88. Also, in *Boulter*, there was no agreement between the parties to stay the litigation while *Airport Land* was pending, the defendants had not filed an answer, and the parties had not actively litigated the case for almost a year before the defendants raised the issue. *Id*. Moreover, the operative complaint in *Boulter* was filed before the decision in *Airport Land*, unlike here, where the operative complaint was filed well after the decision in *Airport Land* was issued. *Id*. The parties waited for over three years to allow the Colorado Supreme Court to provide guidance on the Commission's jurisdiction, or lack thereof, over Plaintiffs' royalty underpayment claims, and it would be entirely inequitable to force the parties to revisit the decisions in C&M I and II now, just because Extraction simply does not agree with *Airport Land*.

Finally, collateral estoppel is inappropriate because this Court is faced with the inconsistent judgments in C&M I and C&M II and the Denver District Court's decision on Extraction's Motion to Dismiss in the State Court Case. *W. Grp. Nurseries,* 867 P.2d at 15. In C&M I and C&M II, the district court found that that there was no contractual dispute between the parties. (Mot., Exs. B and D). However, when the court denied Extraction's Motion to Dismiss in the State Court Case, it found that a "dispute" regarding Extraction's royalty payment obligations under the leases exists. (Ex. 10, p. 2). These orders are entirely inconsistent, and collateral estoppel cannot be applied as a matter of law. *W. Grp. Nurseries,* 867 P.2d at 15. Plaintiffs' claims are therefore not barred, and Extraction's Motion should be denied.

14

V.       **ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE.**

Extraction's final argument that dismissal should be with prejudice is without merit. The applicable precedent provides that a dismissal based on "failure to exhaust" should be without prejudice. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Extraction's reliance on the dismissal order in *Boulter IV* is misplaced because the district court's order of dismissal with prejudice was overturned on appeal to the Tenth Circuit. *Boulter v. Noble Energy Inc.,* No. 23-1118, 2024 WL 622093, at *5 (10th Cir. Feb. 14, 2024) (unpublished). Dismissal with prejudice is a "harsh sanction, [and] it is appropriate only in cases of willfulness, bad faith, or some fault" and should be "exercised with restraint." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005). Evidence of the culpability of these factors must be shown through clear and convincing evidence. *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018). The lack of bad faith on the part of Plaintiffs is evident through the procedural history of this case. Extraction did not take any issue with Plaintiffs' filing of the Complaint in the State Court Case in 2019, and agreed to a stay after complaint was filed. (Mot., Ex. G). After *Airport Land* was decided, Extraction again did not take issue with the filing of the Complaint and agreed to lift the stay and proceed to litigate the case on the merits. Both parties agreed in March of 2020 that a stay would be beneficial to all parties by "promoting judicial economy, and conserving the resources of Plaintiffs, Extraction, and the Court." (Mot., Ex. G, p. 4). Based on this agreement, Plaintiffs patiently waited for years to begin prosecuting their claims against Extraction on behalf of themselves and the proposed class. By cooperatively working with Extraction to avoid any undue expense or resources, Plaintiffs acted in good faith, and dismissal with prejudice is not warranted under these circumstances.

## **CONCLUSION**

For the reasons stated above, this Court should deny Extraction's Motion.

Dated: March 22, 2024                                By: */s/ Stacy A. Burrows*
                                                     Stacy Burrows Co. Bar No. 49199
                                                     Barton and Burrows LLC
                                                     5201 Johnson Dr., Ste 110
                                                     Mission, KS 66205
                                                     (913) 563-6250
                                                     stacy@bartonburrows.com

                                                     -and-

                                                     Lance F. Astrella, Co. Bar No. 5183
                                                     Astrella Law P.C.
                                                     1600 Broadway, Suite 1070
                                                     Denver, CO 80202
                                                     (303) 292-9021
                                                     Fax: (303) 296-6347

                                                     **ATTORNEYS FOR PLAINTIFF
                                                     AND THE PROPOSED CLASS**

16