**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-00037-NYW-MEH

C & M RESOURCES, LLC, and
WINTER OIL, LLC, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

EXTRACTION OIL & GAS, INC., f/k/a EXTRACTION OIL & GAS, LLC,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiffs' Motion to Remand this Case to the Denver District Court (the "Motion to Remand"), [Doc. 18], and Defendant's Motion for Judgment on the Pleadings (the "Motion for Judgment on the Pleadings"), [Doc. 24]. The Court has reviewed the Motions and the related briefing, the applicable case law, and the entire case file, and concludes that oral argument would not materially assist in the resolution of these matters. For the reasons set forth below, the Motion to Remand is respectfully **DENIED** and the Motion for Judgment on the Pleadings is respectfully **GRANTED**.

## BACKGROUND

Plaintiffs C & M Resources, LLC and Winter Oil, LLC ("Plaintiffs") bring this putative class action on behalf of one class and five sub-classes, comprised generally of persons and entities who paid royalties under oil and gas leases and from which Defendant Extraction Oil & Gas, Inc. ("Defendant" or "Extraction") allegedly deducted unused

capacity reservation charges or take-or-pay fees.  [Doc. 4 at ¶ 2].  This case is in its third

iteration.  It was originally filed in the District Court for the City and County of Denver on

February 22, 2017 ("*C & M Resources I*").  *See generally* [Doc. 24-1].  Extraction filed a

motion to dismiss in that case, arguing that the state court lacked subject matter

jurisdiction based on Plaintiffs' failure to exhaust their administrative remedies before the

Energy and Carbon Management Commission (the "Commission").[1]  [Doc. 24 at 2].[2]  The

*C & M Resources I* court granted Defendant's motion to dismiss, concluding that (1) "the

proper forum to resolve this dispute is an administrative proceeding before COGCC";

(2) Plaintiffs had failed to exhaust their administrative remedies; and (3) as a result, the

court lacked subject matter jurisdiction over the case.  [Doc. 24-2 at 5–6].  *C & M*

*Resources I* was, as a result, dismissed without prejudice.  [*Id.* at 6].

Plaintiffs did not appeal that decision, [Doc. 24 at 3; Doc. 24-4 at 1], and instead

refiled the case, again against Defendant and again in Denver District Court, on

November 29, 2018 ("*C & M Resources II*"), *see generally* [Doc. 24-3].  Extraction moved

to dismiss on the same exhaustion grounds, [Doc. 24 at 2], and the state court granted

that motion to dismiss, *see* [Doc. 24-4 at 1].  It first ruled, sua sponte, that Plaintiffs'

complaint was "precluded by the prior case in which Plaintiffs made, and lost, [their] same

jurisdictional argument," [*id.*], i.e., *C & M Resources I*.  In the alternative, it concluded that

it was "clear . . . that COGCC has jurisdiction of this dispute and that Plaintiffs must first

---

[1] The Commission was previously called the Colorado Oil and Gas Conservation Commission ("COGCC").  *See, e.g.*, *Antero Res. Corp. v. Airport Land Partners, Ltd*, 526 P.3d 204, 206 (Colo. 2023).  Throughout this Order, the Court uses the shorthand "Commission," but it does not alter direct quotations from sources using the Commission's prior name.

[2] When citing to filings in this case, the Court cites to the document and page numbers generated by the CM/ECF system.

exhaust that administrative remedy with COGCC." [*Id.* at 1–2]. The court dismissed the second case, again without prejudice, for lack of subject matter jurisdiction based on Plaintiffs' failure to exhaust their administrative remedies. [*Id.* at 2].

Plaintiffs filed their complaint for the third time in state court on December 10, 2019. [Doc. 24-5 at 1]. The case was subsequently stayed, on the Parties' joint motion, for several years pending resolution of *Antero Resources Corp. v. Airport Land Partners, Ltd*, 526 P.3d 204 (Colo. 2023). *See* [Doc. 24-7; Doc. 24-8]. After the Colorado Supreme Court issued its ruling on March 27, 2023, *see Airport Land*, 526 P.3d 204, the stay was lifted on May 24, 2023, [Doc. 24-9]. Plaintiffs filed a second amended complaint in August 2023, and Defendant moved to dismiss Plaintiffs' claims for failure to state a claim. [Doc. 18 at ¶¶ 7–9; Doc. 18-6]. The state court denied most of Extraction's motion to dismiss on October 26, 2023. [Doc. 18 at ¶ 12; Doc. 18-9].

Discovery then commenced. On November 22, 2023, Plaintiffs' counsel emailed Defendant's counsel Plaintiffs' first set of discovery requests, [Doc. 25-10 at 1–2], though the state court did not enter a case management order until December 1, 2023, [*id.*; Doc. 25-9 at 13]. The Parties agreed that, pursuant to Rule 26(d) of the Colorado Rules of Civil Procedure, Plaintiffs' discovery requests "should be treated as if they were served on December 1, 2023." [Doc. 25-10 at 1]. Plaintiffs then filed their Third Amended Class Action Complaint (the "Third Amended Complaint"), the operative pleading in this case, on December 29, 2023. [Doc. 18 at ¶ 14; Doc. 4 at 33]. The Third Amended Complaint asserts 15 claims under state law, including six separate claims for breach of contract; six separate claims seeking declaratory relief concerning various contractual obligations;

claims for a breach of the implied duty to operate prudently and the duty of good faith and fair dealing; and a claim for accounting.  [Doc. 4 at ¶¶ 83–140].

On January 5, 2024, Extraction removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  [Doc. 1].  Extraction's Notice of Removal represents that after receiving Plaintiffs' written discovery requests, it "began conducting a review and analysis of its internal oil and gas payment and costs records related to Plaintiffs' claims for damages," and determined that the amount in controversy exceeds CAFA's $5 million floor for diversity jurisdiction.  [*Id.* at ¶¶ 14–15].  Plaintiffs responded by filing their Motion to Remand on January 29, 2024.  Plaintiffs do not dispute that they seek damages in an amount greater than $5 million or that CAFA confers original jurisdiction on this Court.  Instead, Plaintiffs argue that the case should be remanded on procedural grounds, arguing:  (1) Defendant waived its right to remove the case by filing its motion to dismiss in state court; and (2) the Notice of Removal was untimely filed.  [Doc. 18].[3]

Extraction subsequently filed its Motion for Judgment on the Pleadings on February 20, 2024.  [Doc. 24].  Therein, it argues that the Court lacks subject matter jurisdiction due to Plaintiffs' failure to exhaust their administrative remedies and that Plaintiffs are barred by the doctrine of issue preclusion from relitigating the issue, which has been previously decided by two separate courts.  [*Id.* at 7–13].  It argues that Plaintiffs' Third Amended Complaint should be dismissed with prejudice as a sanction under

---

[3] On February 2, 2024, the Honorable Michael E. Hegarty stayed discovery in this case pending resolution of the Motion to Remand.  [Doc. 23].

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).  [Doc. 24 at 15–16].  The Court addresses both pending Motions below.

## LEGAL STANDARDS

### I.     Removal and Remand

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."   28 U.S.C. § 1441(a).  Under CAFA, federal courts have original jurisdiction over matters in which the amount in controversy exceeds $5 million and the parties are minimally diverse, i.e., any member of the plaintiff class is a citizen of a different state than any defendant.  *Id.* § 1332(d)(2)(A)–(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

In most cases, the notice of removal must be filed within 30 days of service of the initial pleading on the defendant.  28 U.S.C. § 1446(b)(1).  However, if the initial pleading does not indicate that the case is removable, the defendant may remove the case "after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).

The party invoking federal jurisdiction has the burden of establishing the court's jurisdiction.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).   In the context of a motion to remand, the removing party bears the burden of demonstrating that removal was procedurally proper.  *See, e.g.*, *Comm'r of Ins. of P.R. v. MMM Health Care, Inc.*, No. 3:22-cv-01045-SCC, 2022 WL 4102842, at *1 (D.P.R. Sept. 8, 2022) ("When a procedural defect is timely raised, the removing party bears the burden of proving that removal was proper."); Wright & Miller, 14C Federal Practice & Procedure § 3739 (4th ed.

July 2024 update) ("[T]he removing party bears the burden of proof as to all elements of the removal's propriety.").[4]

## II.    Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the standards applicable to motions to dismiss under Rule 12(b)(6).  *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).  In other words, the Court must "accept as true all well-pleaded factual allegations in a complaint and view the[] allegations in the light most favorable to the plaintiff," *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

---

[4] Defendant contends that Plaintiffs bear the burden because they raise a non-jurisdictional, procedural challenge to removal.  *See* [Doc. 25 at 5 (citing *Centura Health Corp. v. Agnew*, No. 18-cv-00569-RBJ, 2018 WL 3454976, at *4 (D. Colo. July 18, 2018); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014))].  In their Reply, Plaintiffs do not address the burden of proof.  *See generally* [Doc. 27].  The Court agrees that the challenges by Plaintiffs to Defendant's removal are non-jurisdictional, but finds that the cases cited by Defendant are not dispositive.  *Woods* addresses the burden when a plaintiff argues that one of CAFA's exclusionary provisions applies, *see* 771 F.3d at 1263, but it does not stand for the general proposition that plaintiffs bear the burden for all non-jurisdictional challenges.  The weight of authority indicates that Defendant, not Plaintiffs, bears the burden of proof to show that removal was procedurally proper.  *See, e.g.*, *MMM Health Care*, 2022 WL 4102842, at *1; *Smith v. Furniture Deals, Inc.*, No. 1:19-cv-01557-AWI-EPG, 2020 WL 429130, at *3 (E.D. Cal. Jan. 28, 2020) ("Once the plaintiff raises a procedural defect in the removal, it is the removing defendant's burden to show compliance with the pertinent procedural requirement."); *McNulty v. Auchter Indus. Serv., Inc.*, No. 2:15-cv-05363-SD, 2015 WL 7252907, at *2 (E.D. Pa. Nov. 17, 2015) ("The defendant bears the burden of establishing removal jurisdiction and complying with all pertinent procedural requirements.").

In conducting its review, the Court "is not limited to the pleadings alone but may take into consideration the broader factual record," including "any written documents attached to th[e] pleadings" or "matters of judicial notice informative of the case's factual background," *Depositors Ins. Co. v. Murphy*, 629 F. Supp. 3d 1050, 1057 (D. Colo. 2022), including state court documents, *Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 747 n.3 (10th Cir. 2013).   "[A] motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."   *Ciber, Inc. v. ACE Am. Ins. Co.*, 261 F. Supp. 3d 1119, 1125 (D. Colo. 2017) (quotation omitted).

**ANALYSIS**

## I.      Priority of the Issues Presented

The Parties dispute whether the Court should decide the Motion to Remand or the Motion for Judgment on the Pleadings first, with each side arguing that their affirmative motion should take priority.   Defendant contends that the Motion for Judgment on the Pleadings must be addressed first because "[f]ederal courts must resolve motions challenging the court's jurisdiction before proceeding to non-jurisdictional challenges." [Doc. 24 at 6].   Plaintiffs counter that their Motion to Remand should be resolved first because, if remand is proper, the state court should rule on the Motion for Judgment on the Pleadings.   [Doc. 34 at 4].

The Court respectfully disagrees with Extraction's contention.   While courts must resolve jurisdictional questions before touching on *merits* issues, *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016), federal courts have "leeway to choose

among threshold grounds for denying audience to a case on the merits," *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)), and there is "no mandatory sequencing of" jurisdictional or non-merits issues, *Sinochem*, 549 U.S. at 431 (quotation omitted); *see also Nessel ex rel. Michigan v. Enbridge Energy, LP*, 104 F.4th 958, 964 (6th Cir. 2024).

Determining whether removal of a case was procedurally defective "does not touch the merits" of a case. *Henry v. Reynolds & Assocs., Inc.*, No. 1:20-cv-02321-TNM, 2020 WL 7186158, at *2 n.2 (D.D.C. Dec. 7, 2020). A number of courts, including the Sixth Circuit, have found it appropriate to address the procedural propriety of removal prior to deciding jurisdictional issues. *See, e.g.*, *id.*; *Enbridge Energy*, 104 F.4th at 964 ("In terms of sequencing, we need not address subject-matter jurisdiction before we address the timeliness of removal."); *FSM Dev. Bank v. Arthur*, No. 5:11-cv-05494-LHK, 2012 WL 1438834, at *3 (N.D. Cal. Apr. 25, 2012) ("The Court may consider the timeliness of the removal before considering whether it has subject matter jurisdiction.").

If, as Plaintiffs contend, removal was procedurally defective and the case is not properly before this Court, then it is the state court, not this Court, that should rule on the Motion for Judgment on the Pleadings. *Cf. H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 675 n.2 (S.D. Ohio 2014) ("The motion to remand must be resolved before the motion to dismiss, because if remand is appropriate, then the state court should decide the motion to dismiss."); *Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 767 (N.D. Ill. 2021) ("If this case is to be remanded, the Court would prefer not to bind the state court unnecessarily on substantive issues."). Absent any Tenth Circuit authority to the contrary, the Court will thus address the Motion to Remand first.

II.     **The Motion to Remand**

Plaintiffs identify two reasons why this case should be remanded to state court. First, they argue that Defendant waived its right to remove when it litigated the case in state court by filing its motion to dismiss, participating in the case management conference, and submitting numerous other filings.  [Doc. 18 at 5–9].  In the alternative, they argue that the removal was untimely.  [*Id.* at 9–11].  Defendant opposes remand, arguing that it timely removed the case after it first discovered that the case was removable, and that its participation in the state-court proceedings did not amount to a waiver of the right to remove because at the time it litigated in state court, it had no notice that the case was removable.  [Doc. 25 at 6–14].  The Court considers each argument in turn.

A.      **Waiver**

"[W]aiver by participation functions as a procedural limitation" on a litigant's ability to remove a case to federal court.  *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017).  Plaintiffs' first argument in favor of remand asserts that Defendant waived its right to remove the case to federal court by actively litigating the case in state court.  [Doc. 18 at 5].  Plaintiffs' argument relies almost exclusively on the Tenth Circuit's decision in *Soto Enterprises*, which recognized a general rule that "a defendant waives removal 'by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court.'"  *Soto Enters.*, 864 F.3d at 1098 (quoting *PR Grp., LLC v. Windmill Int'l, Ltd.*, 792 F.3d 1025, 1026 (8th Cir. 2015)).  In *Soto Enterprises*, the defendant filed a partial motion to dismiss, an answer, and a notice of removal—in that

order—in state court over the course of an afternoon. *Id.* at 1091. The Tenth Circuit concluded that, by filing the motion to dismiss prior to filing the notice of removal, the defendant had waived its ability to remove the case, as filing the dispositive motion "showed its *objective* intent to remain in state court by . . . submitt[ing] the case's merits to the state court for adjudication." *Id.* at 1098. The court articulated a "bright-line rule" that when a defendant files a motion to dismiss in state court, and that motion seeks disposition on the merits of the case, the defendant "manifests a 'clear and unequivocal' intent to submit the case to the state court's jurisdiction, and thus waives removal." *Id.* at 1099.

Plaintiffs argue that *Soto Enterprises*'s bright-line rule precludes Defendant from removing this case from state court. Defendant disagrees, arguing that *Soto Enterprises* does not govern here because at the time Defendant participated in state court, it did not know that the case was removable. [Doc. 25 at 7]. It asserts that this case is instead governed by *Akin v. Ashland Chemical Co.*, which held that "a defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove." 156 F.3d 1030, 1036 (10th Cir. 1998).

The Court respectfully disagrees with Plaintiffs that *Soto Enterprises* forecloses Defendant's ability to remove this case to federal court. *Soto Enterprises* does not address the situation in this case, where the defendant was not on notice of the case's removability at the time its dispositive motion was filed. Indeed, the initial pleading in *Soto Enterprises* plainly pleaded the requirements for federal diversity jurisdiction under § 1332, thus providing clear notice to the defendant that the case was removable. *See*

*Soto Enters.*, 864 F.3d at 1091 ("In its complaint, the City pleaded that it was a New Mexico municipal corporation and that Soto was a Texas corporation transacting business in New Mexico.  The City claimed damages of $246,057.54.").  And *Soto Enterprises* does not address the Tenth Circuit's earlier directive that "a defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal <u>in the absence of adequate notice of the right to remove</u>."  *Akin*, 156 F.3d at 1036 (emphasis added).  It is well established that one Tenth Circuit panel cannot overrule the judgment of another absent en banc consideration or a superseding contrary decision by the Supreme Court, *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1292 (10th Cir. 2024), and Plaintiffs direct the Court to no such authority.

*Akin* and *Soto Enterprises* can and must be harmonized.  The Court reads these two opinions together to conclude that a defendant on notice of a case's removability waives its right to remove if it manifests a clear and unequivocal intent to submit the case's merits to the state court, *Soto Enters.*, 864 F.3d at 1099, but absent adequate notice, a defendant's participation in state court does not amount to waiver, *Akin*, 156 F.3d at 1036.  This is consistent with how other district courts within the Tenth Circuit have addressed the issue post-*Soto Enterprises*.  *See Budnella v. USAA Gen. Indem. Co.*, No. 20-cv-00944-KMT, 2020 WL 2847627, at *6 (D. Colo. June 2, 2020) ("[Defendant] never received adequate notice of removability from Budnella with respect to the amount in controversy.  Therefore, Defendant did not waive its right to remove the case by engaging in litigation in state court prior to removal."); *Parsons v. Nat'l Interstate Ins. Co.*, 544 F. Supp. 3d 1202, 1209 (D. Utah 2021) ("[T]he law is clear that a party cannot waive its right to remove by its state court conduct prior to its knowledge of the removability of a case.");

*Taylor v. Chesapeake Operating, Inc.*, No. 5:18-cv-00565-JD, 2019 WL 522598, at *4 (W.D. Okla. Feb. 11, 2019) ("[T]he Court finds that Defendant did not receive adequate notice of removability until Plaintiffs filed their First Amended Petition."). And while it is not bound by the decisions of other district courts, *see United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."), this Court is persuaded that Defendant did not waive its right to remove the case by engaging in litigation in state court before it discovered that the claimed damages exceeded $5 million, consistent with the common law principle that a party cannot waive a right of which it is unaware, *see Parsons*, 544 F. Supp. 3d at 1209 (recognizing that, under common law waiver principles, "it appears that a party cannot waive a right of which it is unaware").

### B. Timeliness of Removal

In the alternative, Plaintiffs contend that the Notice of Removal is untimely. [Doc. 18 at 9]. They first argue that Extraction knew of the amount in controversy at least as of September 2017, when it "represented to the Denver District Court that it had reviewed[] and 're-calculated' past royalty payments Extraction made to the Plaintiffs and the members of the proposed class and would 'continue to make royalty payments pursuant to the revised methodology,'" citing to Extraction's initial disclosures in *C & M Resources I*. [*Id.* at 10–11]. Plaintiffs assert that "[i]n order to 're-calculate' its royalty payments for the Plaintiffs and the proposed class, Extraction would have necessarily had to review its internal accounting records to ascertain the amount of royalty underpayment, and by extension, the amount in controversy." [*Id.* at 11]. As Defendant

points out, *see* [Doc. 25 at 11], its initial disclosures from *C & M Resources I* do not contain the language quoted by Plaintiffs in their Motion, *see generally* [Doc. 18-13].

Extraction further responds that (1) Plaintiffs have failed to identify any pleading or other paper served on Extraction that provided notice of the case's removability, [Doc. 25 at 11]; (2) pre-suit documents are insufficient to provide a party notice of a case's removability, [*id.* at 10–11]; and (3) any alleged statement about re-calculating payments is "hardly unambiguous," [*id.* at 12]. Plaintiffs do not respond directly to these arguments, instead pivoting to a "proof of claim," filed in Extraction's separate bankruptcy proceedings, in which Plaintiffs alleged that the amount in controversy in this case was $30 million. [Doc. 27 at 8]. Plaintiffs assert that this document gave Extraction notice of the amount in controversy when the Proof of Claim was filed in 2020. [*Id.* at 8–9].[5]

---

[5] Defendant has requested leave to file a surreply to address Plaintiffs' arguments concerning the proof of claim. *See* [Doc. 30 (the "Motion for Leave")]; *see also* [Doc. 30-1 (the proposed surreply)]. Plaintiffs oppose Defendant's request, arguing that "[t]he bankruptcy filings . . . directly respond to Extraction's contention in its Response to the Motion to Remand that it was never on notice of the amount in controversy until December 2023." [Doc. 33 at 2–3 (emphasis omitted)]. The Court is unpersuaded by Plaintiffs' attempt to frame their new theory about notice as simply a responsive argument to Defendant's Response, which did not mention the bankruptcy case at all. Plaintiffs cannot now rely on a new purported source of knowledge that could have been, but was not, discussed in their affirmative Motion to Remand.

When a party advances new arguments or relies on new evidence in a reply brief, the Court may either permit a surreply or disregard the new arguments or evidence. *Green v. U.S. Anesthesia Partners of Colo., Inc.*, No. 22-1319, 2023 WL 7015660, at *7 (10th Cir. Oct. 25, 2023). "[A] district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief." *Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013). Here, the Court exercises its discretion to disregard Plaintiffs' arguments concerning the proof of claim; the Court is satisfied that the proof of claim would not change the Court's analysis on the Motion to Remand, as Plaintiffs cite no authority to suggest that a paper from a <u>different</u> case can satisfy the requirements of 28 U.S.C. § 1446 <u>in this case</u>. The Court will thus **DENY as moot** the Motion for Leave.

The Court concludes that Defendant has carried its burden of proving removability for a number of reasons. There is no dispute that the original complaint in this case did not articulate an amount in controversy exceeding $5 million. *See* [Doc. 18-1]. In addition, Defendant signed the Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1446(a). In doing so, Defendant certified that to the best of its knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, its factual contention that Extraction first estimated that the amount in controversy might exceed the CAFA monetary threshold after discovery began on December 1, 2023 and within 30 days of filing the Notice of Removal, *see* [Doc. 1 at ¶¶ 14–16], had evidentiary support, *see* Fed. R. Civ. P. 11(b)(3). Plaintiffs' arguments to the contrary do not persuade this Court otherwise.

First, the Tenth Circuit has instructed that "the statutory language" of § 1446 "clearly does not contemplate 'papers' submitted before the complaint was filed," *Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1271–72 (10th Cir. 2016), which suggests that any 2017 statements or documents could not have provided Defendant notice of the amount in controversy in *this* case, which was filed in 2019.

Second, the Tenth Circuit is "very strict in assessing whether the grounds for removal are ascertainable." *Id.* at 1269. If removability is not apparent on the face of the initial pleading, "[t]he 30-day clock does not begin to run until the plaintiff provides the defendant with 'clear and unequivocal notice' that the suit is removable." *Id.* (emphasis added) (quoting *Akin*, 156 F.3d at 1036). Defendant's purported statement—which is not apparent in the record in this case—that it was "re-calculating" royalty payments made could not have triggered the 30-day removal window because it was not clear and

unequivocal notice, from Plaintiffs to Defendant, that the case was removable.  Nor can Plaintiffs demonstrate Defendant's notice based solely on what Defendant could have inferred or did learn from its purported calculations.  *Cf. id.* at 1270 ("Any time the plaintiff wishes to start the 30-day clock, it can provide the defendant with an unambiguous notice of what is being claimed.  For similar reasons, other circuits have held that they will not inquire into a defendant's subjective knowledge or what the defendant should have inferred from an investigation or a review of its files." (collecting cases)); *Akin*, 156 F.3d at 1036 ("We disagree with cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." (emphasis omitted)); *Kitts v. Cashco, Inc.*, No. 1:19-cv-00800-RB-KK, 2020 WL 1553845, at *3 (D.N.M. Apr. 1, 2020) (concluding that the defendant "was not required to search its own records to determine the requested damages").

Plaintiffs also argue that the Notice of Removal was untimely because they served their first discovery requests in this case—which are what Defendant claims triggered its investigation and its discovery that the case was removable—on November 22, 2023, but Defendant did not remove the case until January 5, 2024, more than 30 days later.  [Doc. 18 at 11].[6]  However, Plaintiffs' counsel agreed that these discovery requests "should be treated as if they were served on December 1, 2023," the date discovery commenced. [Doc. 25-10 at 1]; *see also* [Doc. 25-9 at 13 (the state court's case management order

---

[6] Plaintiffs preface this argument with the statement that "even if this Court were to find that the Plaintiffs' service of discovery requests constitutes an 'other paper' as used in 28 U.S.C. § 1446(b)(3), which it should not, Extraction's Notice of Removal is still untimely." [Doc. 18 at 11].  The Court notes, however, that Plaintiffs do not make any argument or cite any authority about whether the discovery requests amount to an "other paper" as contemplated in the statute, *see generally* [*id.*], and so the Court does not address this issue.

dated December 1, 2023)]; Colo. R. Civ. P. 26(d) ("[A] party may not seek discovery from any source before service of the Case Management Order pursuant to C.R.C.P. 16(b)(19)."). Plaintiffs do not address this agreement in their Reply. *See generally* [Doc. 27]. Furthermore, the discovery requests do not constitute "clear and unequivocal notice" that the case was removable, *Paros Props.*, 835 F.3d at 1269, given that they do not include any sort of computation of damages or representation of the amount in controversy, *see generally* [Doc. 24-10]. As discussed above, Defendant certified that it was not until its investigation, within 30 days of the filing of the Notice of Removal, that it ascertained that the amount in controversy exceeds $5 million. [Doc. 1 at ¶¶ 14–15]. Plaintiffs have not undermined Defendant's statement in the Notice of Removal or otherwise directed the Court to a pleading, motion, or paper reflecting an amount in controversy over $5 million that was served on Defendant more than 30 days prior to the filing of the Notice of Removal.

In sum, the Court ascertains no procedural defect in Defendant's Notice of Removal. The Motion to Remand is respectfully **DENIED**.

### III.    The Motion for Judgment on the Pleadings

The Court next turns to Extraction's Motion for Judgment on the Pleadings, which argues that the Court lacks subject matter jurisdiction over this case because Plaintiffs failed to exhaust their administrative remedies. [Doc. 24 at 2, 7–13]. Embedded within Defendant's arguments is an assertion that issue preclusion, or collateral estoppel, precludes Plaintiffs from relitigating issues already decided by the *C & M Resources I* and *C & M Resources II* courts. *See, e.g.*, [*id.* at 11–13].

"If complete, adequate, and speedy administrative remedies are available, a party must pursue these remedies before filing suit in district court."  *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000).  There are limited exceptions to the exhaustion requirement, such as when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested," or when the agency "lacks the authority or capacity to determine" the issues.  *Id.* at 1213 (quotation omitted).

Colorado's Oil and Gas Conservation Act (the "Act") provides that the Commission has jurisdiction to determine the "amount of the proceeds plus interest, if any, due a payee by a payer" from "the sale of oil, gas, or associated products from a well in Colorado." Colo. Rev. Stat. § 34-60-118.5(1)(a), (5).  However, the Act excludes "bona fide dispute[s] over the interpretation of a contract for payment" from the Commission's jurisdiction.  *Id.* § 34-60-118.5(5).   Colorado law also provides that it is *the Commission* that must determine, in the first instance, whether a bona fide contractual interpretation dispute exists:

> Before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payer and payee.  If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

*Id.* § 34-60-118.5(5.5); *see also Boulter v. Noble Energy, Inc.*, 521 F. Supp. 3d 1077, 1083 (D. Colo. 2021) ("*Boulter I*") (concluding that, pursuant to this statute, the Commission must decide whether a bona fide contractual interpretation dispute exists).

In *C & M Resources I*, Extraction argued that the case should be dismissed for lack of subject matter jurisdiction based on Plaintiffs' failure to exhaust their administrative

remedies before the Commission.  *See C & M Resources I*, No. 2017CV30685, Def.'s Mot. to Dismiss Pls.' Second Am. Compl. (Colo. Dist. Ct. Denver Cnty. Jan. 19, 2018).[7] Plaintiffs opposed dismissal, arguing (among other things) that the case involved a dispute of contract interpretation, rendering the dispute outside of the purview of the Commission, or alternatively that exhaustion would be futile.  *See C & M Resources I*, No. 2017CV30685, Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss Pls.' Second Am. Class Action Compl. (Colo. Dist. Ct. Denver Cnty. Feb. 9, 2018).  The *C & M Resources I* court rejected Plaintiffs' futility argument and their argument that the case involved a bona fide contractual interpretation dispute, dismissing the case without prejudice for lack of subject matter jurisdiction.  [Doc. 24-2 at 5–6].

After Plaintiffs refiled the case as *C & M Resources II*, Extraction again moved to dismiss, asserting the same exhaustion argument.  *See C & M Resources II*, No. 2018CV34414, Def.'s Mot. to Dismiss Pls.' Compl. (Colo. Dist. Ct. Denver Cnty. Feb. 15, 2019).  Plaintiffs again raised arguments about contractual interpretation and futility of exhaustion.  *See C & M Resources II*, No. 2018CV34414, Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss (Colo. Dist. Ct. Denver Cnty. Mar. 22, 2019).  The state court recognized that Plaintiffs "arguably" had "a stronger futility argument than they may have had in 2017," but concluded that it "[could not] ignore" the ruling in *C & M Resources I* that "the case could not be pursued in district court without first going to COGCC."  [Doc. 24-4 at

---

[7] Neither Party has submitted a copy of the motions to dismiss or opposition briefs filed in *C & M Resources I* or *C & M Resources II*.  However, the Court can take judicial notice of state court filings, *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012), though only "to show their contents, not to prove the truth of matters asserted therein," *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  The Court takes judicial notice of these filings to show the arguments made therein.

1].  It granted Extraction's motion to dismiss and dismissed the case for lack of subject matter jurisdiction.  [*Id.* at 1–2].

The question now before the Court is whether Plaintiffs are collaterally estopped from rearguing the exhaustion issue before this Court.  Plaintiffs contend that they are not.  They raise a number of interconnected assertions, first arguing that (1) a failure to exhaust can be asserted as an affirmative defense, but it is not a jurisdictional defect, [Doc. 34 at 5–6], and that (2) Extraction waived that affirmative defense by not raising it in the answer or motion to dismiss filed in state court prior to removal, [*id.* at 7].  They then return to the substantive arguments made in *C & M Resources I* and *C & M Resources II*, arguing that (3) they had no duty to exhaust their administrative remedies because this case involves a bona fide dispute over contractual interpretation, [*id.* at 8–12], or alternatively, that (4) seeking relief from the Commission would be futile, [*id.* at 12–14].  Plaintiffs also contest the applicability of the collateral estoppel doctrine, asserting that Extraction waived the defense and that the doctrine is inapplicable to this case as a matter of law.  [*Id.* at 14–15].

## A.    Whether a Failure to Exhaust is a Jurisdictional Defect

The Court first addresses whether exhaustion pursuant to Colo. Rev. Stat. § 34-60-118.5(5) is a jurisdictional requirement or a claims-processing rule that can serve as the basis of an affirmative defense, as Plaintiffs contend.  Plaintiffs' argument relies on *Lincoln v. BNSF Railway Co.*, where the Tenth Circuit held, in the employment context, that the failure to file an EEOC charge in response to an adverse employment incident (i.e., a failure to exhaust administrative remedies) is not a jurisdictional defect but an affirmative defense that must be raised by the defendant.  *See* 900 F.3d 1166, 1185 (10th

Cir. 2018).  Plaintiffs claim that *Lincoln*'s "holding applies to all situations where a party seeks to assert a 'failure to exhaust' defense."  [Doc. 34 at 6 (citing *Lincoln*, 900 F.3d at 1181)].

However, *Lincoln* does not reach so broadly.  The *Lincoln* decision specifically addressed <u>federal</u> discrimination claims.  *See Lincoln*, 900 F.3d at 1185 & n.10 ("In so holding, we bring our precedent in line with the overwhelming majority of our sibling circuits who . . . have stated that a plaintiff's failure to exhaust administrative remedies before bringing a <u>Title VII, ADA, or Age Discrimination in Employment Act</u> claim does not deprive a federal court of jurisdiction over the claim." (emphasis added)).  *Lincoln* did not purport to address exhaustion requirements for claims arising under <u>state law</u>, like Plaintiffs'.  *Cf. Lasser v. Charter Commc'ns, Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 2309506, at *5 (D. Colo. Feb. 10, 2020) (declining to apply *Lincoln* to claims under the Colorado Anti-Discrimination Act because *Lincoln* did not involve or discuss CADA).[8] Accordingly, the Court is not persuaded that *Lincoln* provides a default rule for this case.

While this Court recognizes that for the purposes of federal subject matter jurisdiction, an exhaustion requirement is jurisdictional only if Congress "clearly states" that the limitation "shall count as jurisdictional," *Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1247 (10th Cir. 2017) (quotations omitted), the Court must apply Colorado substantive law in this diversity case, *see Racher v. Westlake*

---

[8] The *Lasser* decision is a recommendation issued by Judge Hegarty.  *See Lasser*, 2020 WL 2309506, at *1.  Prior to ruling on the recommendation, The Honorable Raymond P. Moore administratively closed the case pending arbitration without substantively ruling on the recommendation, *see Lasser v. Charter Commc'ns, Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 1527333 (D. Colo. Mar. 31, 2020), and the case was eventually dismissed.  The Court nevertheless finds Judge Hegarty's analysis helpful to the issue before the Court.

*Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017), which includes law concerning exhaustion of administrative remedies, *Lasser*, 2020 WL 2309506, at *3; *Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 786 F. App'x 457, 460 (5th Cir. 2019) (treating "administrative exhaustion as substantive" law).  Plaintiffs cite no authority from the Colorado Supreme Court expressly addressing whether a failure to exhaust administrative remedies before the Commission is a jurisdictional defect or a waivable affirmative defense, and this Court could not locate any such authority.  Absent clear guidance from the Colorado Supreme Court, the Court must predict how the Colorado Supreme Court would rule.  *See Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005).  In so doing, the Court follows the Tenth Circuit's directive that courts may consider "other state courts and federal courts, in addition to the general weight and trend of authority."  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (quotation omitted).  Federal courts look to decisions of the state court of appeals as strongly persuasive, if not governing, authority as to how the state supreme court would rule.  *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000) (explaining that courts "must follow any intermediate state court decision unless other authority convinces [the court] that the state supreme court would decide otherwise." (quotation omitted)).

Colorado courts have recognized a general rule that the failure to exhaust is a jurisdictional defect.  *Aurora Urb. Renewal Auth. v. Kaiser*, 507 P.3d 1033, 1043 (Colo. App. 2022) (observing that "[i]n general, a 'plaintiff's failure to exhaust administrative remedies may deprive a court of jurisdiction to grant the requested relief'") (quoting *Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1197 (Colo. 1993)), *aff'd in part, rev'd in part on other*

*grounds*, 541 P.3d 1180 (Colo. 2024); *Hoffman v. Colo. State Bd. of Assessment Appeals*, 683 P.2d 783, 785 (Colo. 1984); *Kendal v. Cason*, 791 P.2d 1227, 1228 (Colo. App. 1990).  And a number of Colorado courts, including the *C & M Resources I* and *C & M Resources II* courts, have ruled that jurisdiction is lacking where the plaintiff fails to administratively exhaust its remedies under Colo. Rev. Stat. § 34-60-118.5(5).  *See, e.g.*, *Grant Bros. Ranch, LLC v. Antero Res. Piceance Corp.*, 409 P.3d 637, 645 (Colo. App. 2016) (affirming dismissal under Colo. R. Civ. P. 12(b)(1) for failure to exhaust); [Doc. 24-2 at 6; Doc. 24-4 at 2].

A number of judges in this District have held similarly.  *See Boulter I*, 521 F. Supp. 3d at 1084, 1086–87 (the Honorable William J. Martínez dismissing case for lack of subject matter jurisdiction based on failure to exhaust); *Boulter v. Noble Energy, Inc.*, No. 21-cv-01346-RM-KLM, 2021 WL 11653525, at *1 (D. Colo. Oct. 4, 2021) ("*Boulter II*") (the Honorable Raymond P. Moore dismissing claims without prejudice for the reasons set out in *Boulter I*), *aff'd*, 74 F.4th 1285 (10th Cir. 2023); *Boulter v. Noble Energy, Inc.*, No. 21-cv-03500-RM-SKC, 2022 WL 1239323, at *1 (D. Colo. Apr. 27, 2022) ("*Boulter III*") (Judge Moore dismissing case for reasons set out in *Boulter I* and *Boulter II*), *aff'd*, 74 F.4th 1285 (10th Cir. 2023); *cf. Boulter v. Noble Energy, Inc.*, No. 22-cv-01843-DDD-KAS, ECF No. 41 (D. Colo. Apr. 6, 2023) ("*Boulter IV*") (the Honorable Daniel D. Domenico dismissing case on res judicata principles based on *Boulter I*, *Boulter II*, and *Boulter III*); *see also Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1291 (10th Cir. 2023) ("*Boulter V*") (ruling that "[b]ecause Plaintiffs have not exhausted their administrative remedies with COGCC, the district court lack[ed] subject matter jurisdiction" in *Boulter II* and *Boulter III*); *Boulter v. Noble Energy Inc.*, No. 23-1118, 2024 WL 1526289, at *5 (10th Cir. Apr. 9, 2024)

("*Boulter VI*") (concluding that the dismissal of *Boulter IV* should have been without prejudice because dismissal for lack of jurisdiction must be without prejudice).[9]

Absent any on-point authority to the contrary, the Court relies on the available guidance from Colorado courts and, following the "general rule," *Hoffman*, 683 P.2d at 785, concludes that the failure to exhaust administrative remedies before the Commission, as required by Colo. Rev. Stat. § 34-60-118.5(5), is a jurisdictional defect. As a result, the Court need not address Plaintiffs' waiver arguments.  *See Soto Enters.*, 864 F.3d at 1093 (jurisdiction can be challenged at any time).

## B.      Collateral Estoppel

Seeking dismissal based on Plaintiffs' failure to exhaust their administrative remedies, Extraction asserts that Plaintiffs are collaterally estopped from relitigating the exhaustion issue and any related sub-issues, including (1) whether the limited carve-out of the Commission's jurisdiction, related to contractual interpretation disputes, applies here, or (2) whether exhaustion before the Commission would be futile.  [Doc. 24 at 7–15]. According to Extraction, the *C & M Resources I* and *C & M Resources II* courts already decided these issues, which precludes Plaintiffs from raising their same arguments before this Court.  [*Id.* at 12–15].  In response, Plaintiffs argue that Extraction has waived any issue preclusion defense, [Doc. 34 at 14–15], and alternatively assert that the doctrine does not apply here because there are "inconsistent judgments," [*id.* at 15].  The Court addresses Plaintiffs' waiver argument before turning to the doctrine's applicability to this case.

---

[9] Plaintiffs' counsel in this case also represented the *Boulter* plaintiffs in their various actions in this District.  *See, e.g.*, *Boulter I*, 521 F. Supp. 3d at 1079.

1.     **Waiver**

As for Plaintiffs' argument that Defendant waived the collateral estoppel defense, the Court is respectfully unpersuaded.  While the defense of issue preclusion may be waived, *Vanderpool v. Loftness*, 300 P.3d 953, 958 (Colo. App. 2012), *as modified on denial of reh'g* (Aug. 30, 2012),[10] Colorado courts have granted leeway in the timing of a defendant's assertion of the defense.  For example, in *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, the Colorado Supreme Court held that even though issue preclusion was not asserted until the defendant's motion for summary judgment, the defendant had not waived the defense because the plaintiff was not prejudiced by the assertion and had an opportunity to argue against application of the doctrine.  990 P.2d 78, 84 (Colo. 1999).  In addition, the Colorado Court of Appeals has held that a defendant may assert the defense of *claim preclusion* for the first time in a motion to dismiss absent prejudice to the opposing party.  *See Dave Peterson Elec., Inc. v. Beach Mountain Builders, Inc.*, 167 P.3d 175, 177 (Colo. App. 2007).  Relevant here, the *Dave Peterson* court recognized that issue preclusion and claim preclusion "are similar defenses that preserve judicial resources by preventing the relitigation of stale claims" and identified no "meaningful distinction between these two affirmative defenses that would permit . . . the post-answer assertion of one and not the other."  *Id.* at 176–77; *see also Sierra Club v. El Paso Gold Mines, Inc.*, No. 01-cv- 02163-PAC-MEH, 2006 WL 2331082, at *3 (D. Colo. Aug. 10, 2006) (rejecting argument that collateral estoppel defense was waived because the plaintiffs received

---

[10] The Tenth Circuit has declined to answer whether federal or state preclusion law applies in diversity cases because, at least in Colorado, "the outcome under either is the same."  *Boulter V*, 74 F.4th at 1289.  Accordingly, the Court consults both state and federal law to address this issue.

adequate notice of the defense and did not contend that they had been unduly prejudiced).

This case law suggests to the Court that the waiver rule is flexible, turning on equitable considerations of fairness to the parties and preservation of judicial resources. Plaintiffs do not identify any prejudice that would result from the Court considering the defense, *see* [Doc. 34 at 14], and the Court cannot identify any, given that it was raised at the early stages of the actual litigation of this case.  Furthermore, courts may address issue preclusion sua sponte.  *See Banks v. Opat*, 814 F. App'x 325, 332 n.8 (10th Cir. 2020); *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1138 n.3 (D. Colo. 2019).  Thus, even if Defendant did waive the defense, the Court can consider the issue of its own accord.  The Court is therefore unpersuaded by Plaintiffs' waiver argument.

### 2.    Whether Issue Preclusion Applies Here

"[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."  *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004).  The doctrine applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* (quotation omitted).

Defendant argues that Plaintiffs are precluded from relitigating the jurisdictional exhaustion issue because all four elements of claim preclusion are met here.  [Doc. 24 at 11–13].  Plaintiffs do not address those elements, instead arguing that preclusion is

"inappropriate" here because Extraction agreed to stay this case while *Airport Land* was finally resolved, [Doc. 34 at 14–15], and elsewhere arguing that this Court must address *Airport Land*'s applicability to this case, [*id.* at 9–12]. They also contend that issue preclusion does not apply because "this Court is faced with the inconsistent judgments in [*C & M Resources I*] and [*C & M Resources II*] and the Denver District Court's decision on Extraction's Motion to Dismiss in [this case]." [*Id.* at 15].

Applying the elements of issue preclusion, the Court agrees with Extraction that, unless an exception applies, the *C & M Resources I* and *C & M Resources II* decisions preclude Plaintiffs from reraising their exhaustion arguments, including arguments about the futility of exhaustion and whether the Parties' dispute turns on contract interpretation. Indeed, the issue presented here is identical to the one finally decided in *C & M Resources I* and *C & M Resources II*, and Plaintiffs did not appeal those decisions. Although those courts "never reached the merits, dismissals for lack of jurisdiction preclude future relitigation of th[e] jurisdictional question." *Boulter V*, 74 F.4th at 1289. In addition, Plaintiffs—C & M Resources, LLC, and Winter Oil, LLC—were the named plaintiffs in *C & M Resources I* and *C & M Resources II*, *see, e.g.*, [Doc. 24-2 at 1; Doc. 24-3 at 1], and Plaintiffs do not argue that they lacked a full and fair opportunity to litigate the exhaustion issue in state court, *see* [Doc. 34]. Accordingly, absent an exception, Plaintiffs are collaterally estopped from relitigating the exhaustion issue.

One recognized exception to issue preclusion exists if "the issue is one of law and a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise avoid inequitable administration of the laws." *Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097, 1103 (Colo.

App. 1997) (quotation omitted).  While Plaintiffs do not expressly invoke this exception, *see generally* [Doc. 34], their arguments suggest that they might believe the exception applies in light of the 2023 *Airport Land* decision.  *See, e.g.*, [*id.* at 8 (arguing that the courts in *C & M Resources I* and *C & M Resources II* did not "ha[ve] the benefit of the *Airport Land* decision," which they assert "confirms that Plaintiffs are not required to seek administrative relief," and noting that "the operative complaint Extraction seeks to dismiss was filed by agreement of the parties on December 29, 2023, well after the *Airport Land* decision was issued")]; *see also Boulter V*, 74 F.4th at 1290 ("[F]or the issue preclusion change-in-law exception to apply, the relevant change in law must occur between the preclusive judgment and any subsequent action.").  While Plaintiffs' position on whether *Airport Land* constitutes a change in the law is unclear, they contend that "this Court is <u>required</u> to consider" *Airport Land* "when evaluating Extraction's 'fail[ure] to exhaust' defense," [Doc. 34 at 8 (emphasis added)], and because they offer no discernible basis for their position that this Court must consider *Airport Land*, the Court can only assume that Plaintiffs believe that the change-in-law exception applies.  Whatever Plaintiffs' theory, the Court respectfully disagrees that *Airport Land* changes the relevant analysis or precludes application of collateral estoppel.

Like this case, *Airport Land* involved a dispute over royalty payments under certain lease contracts.  *Airport Land*, 526 P.3d at 207.  The plaintiffs in that case began the dispute resolution process by filing a civil action in the district court, without presenting their dispute to the Commission.  *Id.* at 207–08.  The district court dismissed the case after concluding that the plaintiffs "could sue in district court only after exhausting their administrative remedies by giving COGCC the opportunity to determine that it did not

have jurisdiction." *Id.* at 208. The plaintiffs then did present their claims to the Commission, which determined that it did not have jurisdiction over the matter because it involved a bona fide dispute over contractual interpretation, rendering it outside of its jurisdiction under Colo. Rev. Stat. § 34-60-118.5(5). *Airport Land*, 526 P.3d at 208. On judicial review of the Commission's decision, the district court concluded that the Commission *did* have jurisdiction because, "in [the district court's] view, the contracts at issue were unambiguous and resolution of the disputes required only factual determinations." *Id.* The Colorado Court of Appeals subsequently reversed the district court, finding the Commission's jurisdictional determination reasonable and concluding that the leases were subject to a legal dispute. *Id.*

As the Tenth Circuit has explained, "[t]he main issue before the Colorado Supreme Court" in *Airport Land* "was whether the Colorado Court of Appeals correctly held that the Commission's jurisdictional determination [that it lacked jurisdiction due to a bona fide contractual interpretation dispute] was 'reasonable.'" *Boulter VI*, 2024 WL 1526289, at *4. After analyzing the statutory language, the Colorado Supreme Court concluded that if the parties "in good faith disagree about the meaning or application of a relevant term in a lease agreement or contract, there is a 'bona fide dispute over the interpretation of a contract' that divests COGCC of jurisdiction." *Airport Land*, 526 P.3d at 210. The court emphasized that the statute "cannot be read to require COGCC to first engage in contract interpretation to assess the bona fides of the dispute and then to decline jurisdiction," given the statute's directive that "'[n]othing in this section shall be construed' to require COGCC to interpret contracts." *Id.* (quoting Colo. Rev. Stat. § 34-60-118.5(8)(a) (alteration in original)). In other words, it was improper for the trial court to conclude that

the Commission had jurisdiction based on its view that the contract terms were "unambiguous," as "the determination that contract language is unambiguous is itself contract interpretation" and was a determination that the Commission could not make. *Id.* at 211.

Plaintiffs argue that *Airport Land* "provide[s] guidance on the 'central' issue of whether Plaintiffs are required to seek administrative relief with the Commission before seeking relief in a district court." [Doc. 34 at 9]. They assert that *Airport Land* decided "the broad legal issue of what constitutes a '*bona fide* dispute,'" [*id.*], and contend that *Airport Land* stands for the proposition that "the Commission lacks jurisdiction over royalty underpayment disputes involving a written contract as a matter of law," [*id.* at 10]. They also argue that they are not required to obtain a decision from the Commission declining jurisdiction prior to filing a case in district court because, in their view, requiring the Commission to make that threshold determination "would 'run afoul' of the Act's directive that the Commission shall not engage in contract interpretation." [*Id.* at 9–10].

The Court respectfully disagrees that *Airport Land* meaningfully changes this Court's analysis or renders collateral estoppel inapplicable. As a preliminary matter, the *Airport Land* court did not hold that requiring the Commission to determine, in the first instance, whether a bona fide contractual interpretation dispute exists would "run afoul" of the statutory language, as Plaintiff suggests. *See* [*id.* at 9]. Rather, the Colorado Supreme Court instructed that requiring the Commission to "*engage in contract interpretation* to assess the bona fides of the dispute" would "run afoul" of the statute's command. *Airport Land*, 526 P.3d at 210 (emphasis added). It said nothing about whether parties may go directly to the district court if they believe their case involves a

dispute over the interpretation of a contract.  Indeed, the *Airport Land* court did not identify any issue with the fact that, in that case, it was *the Commission* that found a bona fide contractual interpretation dispute that deprived it of jurisdiction.  *See generally id.*

As explained by the *Boulter VI* court, "the *Airport Land* decision did no more than clarify the Commission's limited role in disputes implicating contract interpretation, which is properly constrained to determining whether 'the parties in good faith disagree.'" *Boulter VI*, 2024 WL 1526289, at *5 (quoting *Airport Land*, 526 P.3d at 210).  "[E]ven after *Airport Land*, a 'proceeding regarding the payment of proceeds' <u>must first be presented to the Commission</u>, and jurisdiction is proper in district court <u>only after</u> the Commission determines 'a bona fide dispute exists regarding the interpretation of a contract'" and declines jurisdiction.  *Id.* (emphasis added).  It is undisputed that Plaintiffs have not presented their claims to the Commission, and the *Airport Land* decision thus has no material effect on the *C & M Resources I* or *C & M Resources II* decisions holding that Plaintiffs failed to exhaust their administrative remedies.

In the alternative, Plaintiffs contend that collateral estoppel is inapplicable as a matter of law due to "inconsistent judgments."  They posit that there are inconsistences between the decisions in *C & M Resources I* and *C & M Resources II*, in which the "district court[s] found that . . . there was no contractual dispute between the parties," [Doc. 34 at 15 (citing Doc. 24-2; Doc. 24-4)], and the state court's order denying Defendant's motion to dismiss in this case, which "found that a 'dispute' regarding Extraction's royalty payment obligations under the leases exists," [*id.* (citing Doc. 34-10 at 2)].  Relying on *Western Group Nurseries, Inc. v. Pomeranz*, 867 P.2d 12 (Colo. App. 1993), wherein the Colorado Court of Appeals affirmed a lower court's decision to not apply collateral

estoppel because there were two existing, but inconsistent, prior judgments, *see id.* at 15, Plaintiffs contend that the doctrine "cannot be applied as a matter of law," [Doc. 34 at 15].

The Court does not find any inconsistencies precluding collateral estoppel.  The *C & M Resources I* and *C & M Resources II* courts each concluded that they lacked subject matter jurisdiction due to Plaintiffs' failure to exhaust, and within those rulings, the courts each decided that there is no bona fide contractual dispute in this case.  *See* [Doc. 24-2 at 4–5; Doc. 24-4 at 2].  This same issue was neither presented to nor ruled on by the state court when it ruled on Extraction's motion to dismiss in this case; rather, the Parties' arguments concerned whether Plaintiffs had alleged sufficient facts to state their substantive claims.  *See* [Doc. 34-9; Doc. 18-7].  Indeed, when the state court denied the motion to dismiss, it stated only that:

> Defendant, in its Motion, argues numerous reasons why [Plaintiffs' Second Amended Complaint] is insufficient and should be dismissed.  While these arguments may prove to be true at a later time, they are not a foregone conclusion at this stage <u>and a dispute remains at this stage of the proceedings</u>.

[Doc. 34-10 at 3 (emphasis added)].  The emphasized language, which Plaintiffs assert evinces an inconsistency, *see* [Doc. 34 at 15], is clearly not a substantive ruling that meaningfully contradicts the earlier rulings.

The Court thus agrees with Defendant that collateral estoppel applies in this case. Plaintiffs are precluded from relitigating the issue of administrative exhaustion, including futility of exhaustion, for the third time here.  And because Plaintiffs have not exhausted their administrative remedies before the Commission, this Court lacks subject matter jurisdiction over the case and dismissal is appropriate.  The Motion for Judgment on the Pleadings is therefore respectfully **GRANTED**.

IV.    **Dismissal**

Defendant asks the Court to dismiss this case with prejudice as a sanction under *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).  *See* [Doc. 24 at 15–16].

Typically, a dismissal for lack of subject matter jurisdiction must be without prejudice.   *Boulter VI*, 2024 WL 1526289, at *5.   However, district courts do have discretion to dismiss a case with prejudice as a sanction for litigation misconduct.   *Id.*  "[D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct," *Ehrenhaus*, 965 F.2d at 920, which must be established by clear and convincing evidence, *Xyngular v. Schenkel*, 890 F.3d 868, 873–74 (10th Cir. 2018).  Dismissal with prejudice "should be employed only as a last resort."  *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009).

Five factors inform the Court's decision to dismiss with or without prejudice:

(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (cleaned up).  Extraction briefly discusses the *Ehrenhaus* factors, arguing that (1) it has "incur[red] the costs of litigating the same issue for nearly seven years"; (2) Plaintiffs willfully ignored the *C & M Resources I* and *C & M Resources II* courts, which "constitutes interference with the judicial process"; (3) Plaintiffs authorized the filing of the successive complaints, which shows Plaintiffs' culpability; and (4) no lesser sanctions would be effective.  [Doc. 24 at 15–16].  Defendant acknowledges that the Court has not yet warned Plaintiffs that the case could be dismissed with prejudice as a sanction.  [*Id.* at 16 n.7].  Plaintiffs respond that any dismissal should be without

prejudice, arguing that "[t]he lack of bad faith on the part of Plaintiffs is evident through the procedural history of this case" because they "patiently waited for years to begin prosecuting their claims against Extraction on behalf of themselves and the proposed class" and worked cooperatively with Extraction "to avoid any undue expense." [Doc. 34 at 16].

The Court has carefully considered the *Ehrenhaus* factors and the Parties' arguments and declines to dismiss this case with prejudice.  The Court acknowledges Defendant's argument that Plaintiffs disregarded clear court orders by refiling their case twice without correcting the identified defect, which does reflect a level of disregard for the state courts and their rulings and belies Plaintiffs' assertion that they "patiently waited" to prosecute their claims.  However, Defendant has not directed the Court to any authority showing that this Court may take Plaintiffs' conduct in other cases into account when deciding whether to dismiss the instant case with prejudice.  And while Extraction argues that it has incurred costs due to "litigating the same issue for nearly seven years," [Doc. 24 at 15], they have provided no specific details to permit this Court to ascertain the amount of costs incurred or time expended by Defendant.  Moreover, Defendant's statement that it has been defending against these claims "for nearly seven years" is not supported by the record, as this timeline fails to account for the three years the case was stayed pending *Airport Land* or the time, amounting to nearly one year, when there was no case pending after the dismissals of *C & M Resources I* and *C & M Resources II*.  The Court does not discount the efforts Defendant *has* expended in this litigation, including briefing several issues over two substantive motions, but the Court will not enter the

"extreme sanction" of dismissal with prejudice based on statements that are not supported by the record.

Because Defendant has not presented the Court with clear and convincing evidence that dismissal with prejudice is warranted in this case, the Court will dismiss the case without prejudice for lack of subject matter jurisdiction.  With that said, **Plaintiffs are advised that if they choose to file a fourth iteration of this case without exhausting their administrative remedies before the Commission, and the case reaches federal court, there exists the possibility that the presiding judge may dismiss their case _with_ prejudice as a sanction for litigation misconduct.**

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)     Plaintiffs' Motion to Remand this Case to the Denver District Court [Doc. 18] is **DENIED**;

(2)     Defendant's Motion for Leave to File Surreply to Plaintiffs' Motion to Remand this Case to the Denver District Court [Doc. 30] is **DENIED as moot**;

(3)     Defendant's Motion for Judgment on the Pleadings [Doc. 24] is **GRANTED**;

(4)     Plaintiffs' claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction;

(5)     Defendant is entitled to its costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54.1; and

(6)     The Clerk of Court is directed to close this case.


DATED:  July 18, 2024                        BY THE COURT:

                                             _____
                                             Nina Y. Wang
                                             United States District Judge